**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 374.]**

RULLI, APPELLANT, *v.* FAN COMPANY ET AL., APPELLEES.

[Cite as *Rulli v. Fan Co.*, 1997-Ohio-380.]

*Civil procedure—Where meaning of terms of settlement agreement is disputed, or there is a dispute that contests the existence of a settlement agreement, trial court must conduct an evidentiary hearing prior to entering judgment.*

Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment.

(No. 96-249—Submitted April 1, 1997—Decided September 10, 1997.)

APPEAL from the Court of Appeals for Mahoning County, No. 94 C.A. 14.

————————————

{¶ 1} Frank A. Rulli, appellant, initiated an action in 1992 in the Court of Common Pleas of Mahoning County against his brothers, appellees Nick and Anthony Rulli. In his complaint, Rulli alleged that his brothers had excluded him from the operation of a corporation (Rulli Bros., Inc.), in which he and his brothers were equal shareholders, and a partnership (Fan Co.), in which the three were equal partners. Rulli sought a financial accounting of the two businesses as well as other property received and distributed, and also sought access to the books and records of the corporation and the partnership.

{¶ 2} On June 23, 1993, during a hearing before the trial judge on pending motions, counsel for both parties indicated that they had reached a settlement purporting to resolve all matters involved in the dispute. Counsel for Frank Rulli then read into the record that Frank Rulli would purchase his brothers' interest in both the corporation and the partnership by paying his brothers $950,000 each for their interest. Counsel further stipulated that the corporation would be sold by asset sale, with the terms being cash payable within ninety days; the corporation would

maintain a minimum inventory of $200,000; and all fixtures were to remain intact and in place. Nick and Anthony Rulli retained the right to use the names "Rulli Brothers" and "Rulli Brothers Market" in any future business, and agreed to be solely responsible for encumbrances, liens, or liabilities of the two businesses. All three brothers agreed to be equally responsible for a mortgage on a parcel of real estate owned by the partnership.

**{¶ 3}** In response to a query by the trial court, Nick, Anthony, and Frank Rulli all indicated that they understood the parameters of the settlement agreement and agreed to be bound by it. The trial judge then stated that he would "mark the case called for hearing, case settled and dismissed," and gave counsel twenty-one days to submit a separate judgment entry. The court filed a judgment entry on June 23, 1993, to this effect.

**{¶ 4}** No separate entry was ever filed, nor did the parties ever complete a formal purchase agreement. Anthony and Nick Rulli filed a motion to enforce the agreement, in which they disputed the meaning of the statements read into the record at the prior hearing. They asserted that the agreement required Frank Rulli to pay $1.9 million for the entire partnership and its assets and for the inventory of the corporation free and clear of any liabilities, and that they each were responsible for paying one third of an existing mortgage. Frank Rulli argued that he was only responsible for purchasing the assets of the partnership and the corporation, and that the partners would then pay off the existing mortgage and distribute to each of the parties the balance of their capital and income accounts (approximately $45,000 each). This interpretation would have resulted in Anthony and Nick Rulli each receiving $852,500 as a net proceed from the transaction. Frank Rulli also stated that Nick and Anthony Rulli were excluding cash, the corporate name, and refunds due from suppliers on return items from the assets of the corporation in violation of the agreement. As a result, Frank Rulli filed a motion to vacate the June 23, 1993 judgment entry.

2

**{¶ 5}** The trial court conducted a proceeding in which the judge allowed oral arguments on both motions. At the hearing, counsel for Frank Rulli attempted to admit into evidence two exhibits: an unsigned eleven-page settlement agreement and an affidavit by counsel stating his inability to conclude the agreement. The trial court sustained defendants' objection, concluding that the parties had reached a settlement at the prior hearing by stating that the plaintiff's claim that no final agreement had been reached was nothing more than an attempt to renege on the settlement. Judgment was then ordered pursuant to the defendants' interpretation of the agreement, without any consideration of the additional evidence the plaintiff had attempted to admit at the hearing. The trial court awarded two million dollars in money damages to the defendants. The court of appeals affirmed, but modified the original judgment awarding damages by ordering specific performance pursuant to the sale price as discussed in the original hearing.

**{¶ 6}** The cause is now before the court pursuant to the allowance of a discretionary appeal.

_____

*Manchester, Bennett, Powers & Ullman, L.P.A*., and *John F. Zimmerman, Jr*., for appellant.

*Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A., James L. Messenger* and *Jerry M. Bryan*, for appellees.

_____

**MOYER, C.J.**

**{¶ 7}** The question presented in this civil action is whether a trial court abuses its discretion by ordering the enforcement of a disputed settlement agreement without first conducting an evidentiary hearing. Analysis of the law and the underlying record in this case causes us to conclude that it is not within the province of the trial judge to enforce a purported settlement agreement when the

substance or the existence of that agreement is legitimately disputed. Accordingly, we reverse the judgment of the court of appeals.

{¶ 8} Where possible, it is generally within the discretion of the trial judge to promote and encourage settlements to prevent litigation. *In re NLO, Inc.* (C.A. 6, 1993), 5 F.3d 154. A trial judge cannot, however, force parties into settlement. See *id*. The result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof. *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 79, 2 OBR 632, 633, 442 N.E.2d 1302, 1304. To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear. "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." (Footnote omitted.) 1 Corbin on Contracts (Rev.Ed. 1993) 525, Section 4.1.

{¶ 9} In addition, the law disfavors court enforcement of contracts laden with ambiguity. "Courts have often said that they do not make contracts for the parties, very often in cases in which they wash their hands of a difficult problem that is thrust upon them by reason of incompleteness or indefiniteness in the expression of some term in a written instrument by which the parties clearly intended to be bound." *Id*. at 529, Section 4.1.

{¶ 10} We observe that courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants. Though we encourage the resolution of disputes

through means other than litigation, parties are bound when a settlement is reduced to final judgment. Since a settlement upon which final judgment has been entered eliminates the right to adjudication by trial, judges should make certain the terms of the agreement are clear, and that the parties agree on the meaning of those terms.

{¶ 11} Though upon first examination, the settlement terms as read into the record on June 23, 1993, appear reasonably clear, the parties were subsequently unable to agree upon the meaning and effect of those terms. They were unable to execute a formal purchase agreement and they did not provide the court with an entry as ordered by the court. The parties instead offered varying interpretations of the terms read into the record, and disputed nearly every major element of the purported agreement. Therefore, the language read into the record at the initial hearing reflects, at best, merely an agreement to make a contract.

{¶ 12} Given the lack of finality and the dispute that evolved subsequent to the initial settlement hearing, we hold that the trial judge should have conducted an evidentiary hearing to resolve the parties' dispute about the existence of an agreement or the meaning of its terms as read into the record at the hearing, before reducing the matter to judgment. Where parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties. To do so would be to deny the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement. In the absence of such a factual dispute, a court is not required to conduct such an evidentiary hearing. *Mack v. Polson Rubber Co.* (1984), 14 Ohio St.3d 34, 14 OBR 335, 470 N.E.2d 902, syllabus.

{¶ 13} Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment. The

judgment of the court of appeals is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*

*and cause remanded.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

**{¶ 14}** I respectfully dissent. An oral settlement agreement entered into in the presence of the court constitutes a binding contract. *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324. As a contract, the settlement agreement is subject to contract defenses such as mistake and indefiniteness. A settlement agreement, however, is also subject to common rules of contract construction. Application of these rules prevents Frank Rulli from avoiding his agreed-to settlement obligations.

I

Indefiniteness

**{¶ 15}** The majority concludes that the settlement agreement read into the record is too indefinite for the court to enforce and that the terms of that agreement, at best, reflect an agreement to make a contract. I disagree in both respects.

**{¶ 16}** "Vagueness, indefiniteness, and uncertainty are matters of degree, with no absolute standard for comparison. It must be remembered that all modes of human expression are defective and inadequate." 1 Corbin on Contracts (Rev. Ed. 1993) 528, Section 4.1. "The courts must take cognizance of the fact that the argument that a particular agreement is too indefinite to constitute a contract frequently is an afterthought excuse for attacking an agreement that failed for reasons other than the indefiniteness." *Id.* at 535-536, Section 4.1.

{¶ 17} For a court to enforce a contract it must be capable of understanding, from the parties' expressions, the terms upon which the parties have agreed. See *id.* at 525, Section 4.1. "[A]n agreement can constitute an enforceable contract despite the fact that the parties have agreed to agree later on important terms or have agreed that final agreement will be memorialized in a final writing." *Id.* at 532, Section 4.1. Moreover, while indefiniteness of an agreement may be an indicium of a lack of contractual intent, a "court should be slow to come to this conclusion if it is convinced that the parties themselves meant to make a 'contract' and to bind themselves to render a future performance." *Id.* at 569, Section 4.3.

{¶ 18} Counsel for appellant concedes that "the parties and their counsel * * * stipulated on the record * * * that they had reached a settlement of all issues then in dispute between them, and that this settlement was to be effected by the purchase and sale of Appellees' interests in the two businesses in question." Review of the record reveals that appellant's attorney entered a reasonably detailed buy-out agreement concerning the partnership and corporation. The agreement included the purchase price of the businesses, the terms and time for payment, and the required inventory on transfer of the corporation. The agreement also specifically designated the sale of the corporation as an asset sale, addressed the parties' continued use of the trade name "Rulli Brothers," contained a geographically limited covenant not to compete, and required each party to pay an equal share of the remaining partnership mortgage. Each party assented to this agreement on the record.

{¶ 19} Despite the existence of this detailed settlement agreement, appellant argues that the parties' later inability to complete a draft purchase agreement setting out more complete sale terms establishes that the parties initially lacked the requisite intent to enter into a contract. As aptly demonstrated in the court of appeals' opinion, however, the terms of the oral settlement agreement are detailed enough to determine contractual intent. While the parties were free to supplement

the oral contract with parol agreements and to further incorporate them into an integrated purchase agreement, nothing required the parties to do so and failure to agree to parol terms did not vitiate the parties' original intent to contract.

{¶ 20} Appellant specifically addresses four issues as "material" to the transaction, yet unresolved in the oral settlement agreement: "1) there is no allocation of the purchase price among assets to be conveyed by Appellees to Appellant, even as between the partnership and corporation; 2) there is no provision for the standard warranties and representations customarily given by a seller to a buyer in an asset sale, such as a warranty of corporate good standing, a warranty of title, a warranty of authority to convey, etc.; 3) although provision is made for a 'minimum inventory of $200,000.00 value[d] at cost,' no procedure is established for determining which items (such as perishables, 'out of date' materials, packaging materials, etc.) are to be excluded from inventory for purposes of determining the minimum required amount of inventory to be transferred, or for resolving disputes between the parties with respect to the valuation of inventory; and 4) there is no provision allocating the risk of loss or damage to the assets to be conveyed pending closing of the sale." Appellant additionally cites the lack of a provision "allocating taxes and other expenses associated with the purchase and sale of the assets in question" as a factor rendering the settlement agreement fatally indefinite.

{¶ 21} It may have been prudent for appellant and his counsel to include some, if not all, of these terms in the initial settlement agreement. These terms, however, are not so essential to the core agreement that failure to include them should render the contract unenforceable. The rule of indefiniteness restrains courts from enforcing contracts where the parties' expressions are inadequate to reveal their contractual intent. Where, however, the parties express a contractual intent to undertake discernible mutual obligations, courts should not defeat those intentions because one or both of the parties lacked the foresight to negotiate terms that would have been more prudently included in the agreement. Accordingly, I disagree with

the majority that the oral settlement agreement is so incomplete that it, at best, reflects an agreement to make a contract.

## II

### Mistake

**{¶ 22}** Appellant cites several additional conflicts to demonstrate a failure of mutual assent. These conflicts focus on the parties' varying interpretations of the terms of the oral settlement agreement, rather than a failure of operative terms to create an enforceable contract. Accordingly, these issues are most appropriately analyzed as concerning the contract defense of mistake.

**{¶ 23}** Review of the procedural history of this case reveals that most of the "mistakes" that appellant now asserts as demonstrating a lack of mutual assent could be raised as defenses by appellees, but not by appellant himself. Consistent with the meanings ascribed to the settlement agreement by appellant, the appellate court concluded that the agreement required appellees to transfer, as assets of the corporation, the corporate name and all business records, cash, licenses, and leases belonging to the corporation. The subject of unilateral mistake is addressed in 1 Restatement of the Law 2d, Contracts (1981) 394, Section 153, as follows:

"When Mistake of One Party Makes a Contract Voidable

"Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is *voidable by him* * * *[.]" (Emphasis added.)

**{¶ 24}** Accordingly, even assuming that these issues create an avenue to defeat the settlement agreement, the agreement would be voidable at the option of appellees, not the appellant.

**{¶ 25}** Appellant additionally argues that the parties disagreed over the meaning of the language of the settlement agreement concerning the covenant not

to compete. The appellate court, however, properly concluded that the language of the covenant was clear and unambiguous, needing no interpretation.

{¶ 26} "When two parties have reduced their agreement to writing [or have orally expressed their intentions to contract in identical words (Corbin at 619-620, Section 4.10)], using the words that each of them consciously intends to use, it is often not a sufficient ground for declaring that the agreement is void or subject to cancellation by the court that the parties subsequently gave different meanings to the agreed language, or even that they gave different meanings thereto at the time the agreement was expressed. If the meaning that either one of them gave to the words was the only reasonable one under the existing circumstances, as the other party has reason to know, the latter is bound by that meaning and there is a contract accordingly." (Footnote omitted.) Corbin at 617, Section 4.10.

{¶ 27} Courts have an obligation to give plain language its ordinary meaning and to refrain from revising the parties' contract. See *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150, and paragraph two of the syllabus. Accordingly, interpretation of a clear and unambiguous contract term, such as this one, is a matter of law, and a court should not admit extrinsic evidence to establish its meaning. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501.

III

Conclusion

**{¶ 28}** Appellant has not demonstrated that he is entitled to have the settlement agreement voided as a matter of law, or that he was improperly denied an evidentiary hearing. This is not to say that there are no circumstances where an evidentiary hearing might be required to enforce an oral settlement agreement entered into before the court. Such a hearing is proper to resolve ambiguity in the terms of the agreement, to collaterally enforce parol agreements supplementing the contract, and to determine whether fraud or mistake occurred during contract formation that would render the contract voidable by the party seeking to avoid its force. Because none of those circumstances is present in this case, I would affirm the judgment of the appellate court.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____