OPINION
{¶ 1} Appellant, Riordan's Sporting Goods, Inc., appeals from a final judgment of the Trumbull County Court of Common Pleas granting a motion to enforce a settlement agreement filed by appellee, Riordan's Sports Equipment, LLC. For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} On January 15, 2002, appellant, which is owned by Thomas and Joanne Vargo, filed a complaint against appellee seeking injunctive relief. In its complaint, appellant alleged that appellee, which is owned by Larry Wolf, had intentionally used a similar business name in order to take advantage of the name recognition established by appellant in the community. As a result, appellant asked the trial court to issue an injunction preventing appellee from using the name "Riordan's" while conducting business within ten miles of Hubbard, Ohio.
 {¶ 3} Appellee responded by filing an answer that included a counterclaim. After rejecting appellant's request for a temporary restraining order, the trial court scheduled the matter for a preliminary injunction hearing. On the day of the hearing, appellant, with leave of court, amended its complaint, reasserting its original request for injunctive relief and adding an additional claim for monetary damages. The magistrate conducting the hearing then considered the evidence and issued a written decision recommending that the trial court grant appellant a preliminary injunction.
 {¶ 4} Following the magistrate's decision, the parties began discussing settlement possibilities.[1] However, when the Vargos refused to sign a proposed agreement prepared by appellee's attorney, appellee filed with the trial court a motion to enforce the settlement agreement.
 {¶ 5} The trial court held an evidentiary hearing on July 17, 2002. During the proceedings, the Vargos and Wolf both testified about what they believed were the terms of the settlement. Although the parties agreed that they had reached some form of an understanding on June 7, 2002, they disagreed about several of the precise terms. The Vargos understood the agreement to prevent appellee from engaging in any work that appellant was also involved in, while Wolf believed that the agreement only applied to retail sporting goods. The Vargos also testified that they never intended to release appellee from the claim for damages raised in appellant's amended complaint. Wolf, however, stated that the parties had agreed to release each other from all claims that were, or could have been, raised in the complaint and counterclaim.
 {¶ 6} On July 24, 2002, the trial court issued a judgment entry granting appellee's motion to enforce, concluding that the release and settlement agreement submitted by appellee represented the parties' entire understanding. Accordingly, the trial court adopted the proposed agreement as an order of the court, and ordered appellant to pay the rent and utilities for appellee's place of business from June 25, 2002, until appellant removed the inventory from the premises.
 {¶ 7} From this decision, appellant filed a timely notice of appeal with this court and now raises the following assignments of error for our consideration:
 {¶ 8} "[1.] The Trial Court erred in ordering the enforcement of a purported settlement agreement when the substance of the same is legitimately disputed[.]
 {¶ 9} "[2.] The Trial Court erred in ordering the Plaintiff-Appellant to pay the rent and utilities for the Defendant-Appellee[']s place of business[.]"
 {¶ 10} Under its first assignment of error, appellant argues that the trial court abused its discretion when it granted appellee's motion to enforce as the parties never agreed on every essential term. The company maintains that after reaching what it thought was a settlement agreement, the parties soon disagreed as to the extent of the non-compete clause and as to whether the settlement applied to all claims.
 {¶ 11} A settlement agreement is a binding contract designed to terminate a claim by preventing or ending litigation. Powers v. MagitechCorp. (Mar. 22, 2002), 11th Dist. No. 2001-L-015, 2002 WL 445045, at 2. However, even though such agreements are preferred in the law, and a trial court should promote and encourage settlements, a court cannot force parties to enter into a settlement agreement. Rulli v. Fan Co.
(1997), 79 Ohio St.3d 374, 376.
 {¶ 12} Rather, a settlement agreement must meet the essential requirements for the formation of a valid contract before it will be subject to enforcement. Powers at 2. "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." Rulli at 376. See, also, Kostelnik v. Helper, 96 Ohio St.3d1,2002-Ohio-2985, ¶ 15 (observing that "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract."). That being said:
 {¶ 13} "`A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.'" (Footnote omitted.) Rulli at 376, quoting 1 Corbin on Contracts (Rev.Ed. 1993) 525, Section 4.1.
 {¶ 14} Courts should be reluctant to enforce an ambiguous or incomplete understanding that is intended to act as a settlement agreement between two parties. Rulli at 376. "Since a settlement upon which final judgment has been entered eliminates the right to adjudication by trial, judges should make certain the terms of the agreement are clear, and the parties agree on the meaning of those terms." Id.
 {¶ 15} Looking at the evidence introduced during the July 17, 2002 hearing, we conclude that the parties never entered into an enforceable settlement agreement. Clearly, the Vargos and Wolf had different opinions on what business activities the settlement agreement permitted appellee to engage in. There is also a question as to whether the Vargos intended to release all of appellant's claims against appellee as part of the settlement. Therefore, because the parties offered different interpretations of the terms, it was "not within the province of the trial judge to enforce a purported settlement agreement when the substance or the existence of that agreement [was] legitimately disputed." Rulli at 376.
 {¶ 16} We recognize that a party is not allowed to unilaterally repudiate an otherwise valid settlement agreement. Mack v. Polson RubberCo. (1984), 14 Ohio St.3d 34, 36. Nevertheless, there is absolutely no indication that the Vargos changed their minds in an effort to avoid their obligations under the alleged agreement. What business activities were included under the settlement, and whether all pending claims were being released, were essential terms that the parties had to reach a mutual understanding on before a contract could be formed.
 {¶ 17} "Where parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties. To do so would be to deny the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement." Rulli at 377. This is precisely what the trial court did here. Instead of entering judgment upon a mutual agreement, the trial court simply adopted appellee's interpretation.
 {¶ 18} This is not a situation where the parties entered into an agreement in the presence of the trial court and placed the terms on the record, which would have permitted the court to enter judgment consistent with that agreement. Spercel v. Sterling Industries, Inc. (1972),31 Ohio St.2d 36, paragraph one of the syllabus. As a result, because it was obvious that the parties did not agree on every essential term, the trial court abused its discretion in granting appellee's motion to enforce. See, e.g., Kostelnik at ¶ 16 (holding that "[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract."). Appellant's first assignment of error has merit.
 {¶ 19} Based on our disposition of appellant's first assignment of error, any analysis with respect to its second assignment of error would be moot. The judgment of the trial court is reversed, and we remand the matter for further proceedings consistent with this opinion.
DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.
[1] Appellee filed objections to the magistrate's decision on May 31, 2002. On July 2, 2002, the trial court overruled those objections and adopted the magistrate's decision.