OPINION
{¶ 1} Defendant-appellant, Pravinchandra G. Talati, appeals from a Mahoning County Common Pleas Court decision ordering the enforcement of a settlement agreement between appellant and plaintiffs-appellees, Steve and Rose Tzarnas.
 {¶ 2} The parties to this appeal are adjacent property owners. Appellees own a parcel of land on Market Street in Boardman on which they operate the Townhouse Restaurant. Appellant owns the abutting land on the south side of appellees' property on which he operates a Days Inn. On November 1, 1996, appellees filed a complaint against appellant for trespass, nuisance, and ejectment. The complaint alleged that appellees had recently discovered that appellant was maintaining a sewer line across their property without an easement to do so. It maintained that appellant's property contained sufficient frontage on Market Street so that he could maintain a sewer line connection on his own property. Appellees sought an order directing appellant to disconnect and remove the sewer line from their property and sought compensation for appellant's prior and current use of their property plus damages for every day their business would have to be shut down.
 {¶ 3} After several years of pretrial litigation, the court put on an entry, which appears on the record as follows: "Per counsel, this case is settled and dismissed. see detailed journal entry to follow." (June 30, 2000 Judgment Entry). The next entry on the record is a March 23, 2001 motion by appellees to place the matter back on the trial docket. In the motion, appellees alleged the parties entered into a settlement agreement in the court's presence and that appellant had reneged on the settlement. The court subsequently placed the case back on its active docket. On September 13, 2002, appellees filed a motion to enforce settlement agreement. The court held a hearing on the motion on January 31, 2003. On February 11, 2003, the court entered judgment concluding the parties had in fact entered into a settlement agreement and ordered appellant's compliance with it. Appellant filed his timely notice of appeal on March 4, 2003.
 {¶ 4} Appellant raises one assignment of error, which states:
 {¶ 5} "The parties purported settlement agreement never arose to the level of a legally enforceable contract such that it became binding and enforceable upon the parties."
 {¶ 6} Appellant argues that the parties never entered into a final settlement. He contends that although the parties may have reached a purported agreement, because the court could not determine the settlement terms with reasonable certainty, it could not enforce the agreement. Appellant asserts that in this case, the issue is not whether the partiesthought they had reached a settlement, but instead did they create a legally binding agreement. Citing, Noroski v. Fallet (1982),2 Ohio St.3d 77, 79. He claims that the substance of the purported settlement was legitimately disputed, thus the court could not enforce it. Citing, Rulli v. Fan Co. (1997), 79 Ohio St.3d 374.
 {¶ 7} Appellant points out that the purported settlement agreement was prepared by appellees' counsel, without the benefit of a court record preserving the oral terms and conditions from the former pretrial. He also contends appellees' counsel ignored his written objections to certain provisions. Appellant further contends appellees ignored his notice to pursue an alternative remedy in installing a new sewer line across his own property. He also points out that since the parties' properties are adjacent to each other, appellees were aware of the fact that he was excavating his property for the installation of a new sewer line and chose to wait until excavation was completed before filing their motion to enforce the purported settlement. Appellant argues that appellees' silence to his written notice and their continued silence during the installation of the new sewer estops them from denying his acceptance of a counterproposal of settlement.
 {¶ 8} As a preliminary matter, we shall address appellees' argument that this appeal must be dismissed because appellant failed to include a statement of his assignments of error with reference to the record in violation of App.R. 16(A)(3). While appellant has failed to include in his brief a statement of his assigned error with a reference to record under a separate heading, he has included his assignment of error both in his table of contents and at the beginning of his argument and his argument refers us to the court's alleged error. In the interests of justice, this substantial compliance suffices.
 {¶ 9} The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends primarily on the question presented. If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding. Chirchiglia v. Ohio Bur. of Workers' Comp. (2000),138 Ohio App.3d 676, 679. "Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Rulli, 79 Ohio St.3d at the syllabus. If the dispute is a question of law, an appellate court must review the decision de novo to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law. Continental W. CondominiumOwner's Assn. v. Howard E. Ferguson, Inc. (1995), 74 Ohio St.3d 501,502.
 {¶ 10} In this case, the court was faced with a dispute concerning whether the parties ever reached a settlement agreement. Thus, it was required to conduct an evidentiary hearing, which it did. At the hearing, the court heard testimony from appellant, appellee-Steve Tzarnas, and appellees' son, who participated in the June 30, 2000 negotiations with appellees. When questioned by appellees' counsel concerning whether he participated in settlement negotiations, appellant refused to answer the questions posed and was uncooperative. (Tr. 9-16). Nicholas Tzarnas, appellees' son and the manager of the Town House Restaurant, testified that he was present in court with his parents on June 30, 2000 and that the parties entered into a settlement agreement that day. (Tr. 27). Nicholas stated that he left court that day believing a settlement was in place. (Tr. 32). Finally, Steve testified that he was involved in the negotiations on June 30, 2000. (Tr. 34). He stated that afterwards he received a copy of a judgment entry of settlement from his counsel, which he and his wife signed and he agreed with. (Tr. 34-35).
 {¶ 11} The judgment entry that Steve Tzarnas testified about was the proposed settlement agreement drafted by appellees' counsel. The entry stated: "The Court finds that the parties hereto, prior to trial, have come to a settlement of their claims against each other, the terms of which are embodied in the following entry." The entry goes on to set out the parties' rights under the settlement. The main terms are that: (1) appellees are granted judgment against appellant for $15,500 or the actual cost of installing separate sewer lines, whichever is lower; (2) appellant is to transfer to appellees a parcel of his land as described in the judgment and a 12.5 foot wide easement for ingress and egress and that, if required by a governmental agency in order to allow for use of the land, appellant will enlarge the easement; and (3) appellees are to transfer to appellant a permanent easement for his sewer line running across appellees' property. (Plaintiff's Exh. 1).
 {¶ 12} Additionally, appellant introduced three letters into evidence from his counsel to appellees' counsel. The first letter, dated August 21, 2000, stated that appellant reviewed the proposed settlement judgment entry and that appellant never agreed to the $15,500 figure, only to that approximate cost, and that appellant never agreed to an easement larger than 12.5 feet. The letter concluded, "Please advise accordingly." (Defendant's Exh. 1). The second letter, dated August 31, 2000, stated that appellant had decided to install a new sewer system across his own property. (Defendant's Exh. 2). The third letter, dated September 14, 2000, stated that appellant opted to install a new sewer on his property and remove the sewer line on appellees' property. It instructed appellees' counsel to contact appellant's counsel if there were any questions. (Defendant's Exh. 3).
 {¶ 13} The trial court found that on June 30, 2000, the parties reached a settlement agreement. It noted that when the parties met on June 30, 2000, they met in the court's presence and negotiated a settlement of the case. The court stated that the parties fully discussed the settlement agreement in the court's presence, but off the record. The court found that appellees' counsel prepared a judgment entry which accurately reflected the parties' agreement, but that appellant refused to execute the agreement as agreed. Additionally, the court found appellant failed to propose his own entry to effectuate the settlement agreement.
 {¶ 14} Because appellant had since installed a sewer line across his own property, the court found that the part of the settlement agreement which called for payment by appellant to appellees for the installation of a new sewer line over appellees' property was no longer necessary. Therefore, the court only ordered enforcement of the second part of the settlement agreement, which called for the transfer of a parcel of real estate and an easement of ingress and egress adjoining appellees' land to settle appellees' claims for trespass.
 {¶ 15} When parties voluntarily enter into an agreement in the presence of the court, the agreement is a binding contract. Spercel v.Sterling Industries, Inc. (1972), 31 Ohio St.2d 36, at paragraph one of the syllabus. Generally, a trial court may enforce an oral settlement that was agreed to by the parties in the presence of the court, regardless of whether it was reduced to writing. Gibson v. Meadow GoldDairy (2000), 88 Ohio St.3d 201, 203.
 {¶ 16} The trial court did not have sufficient evidence upon which to conclude the parties had entered into a settlement agreement. A settlement agreement is a contract. Continental W. Condominium UnitOwners Assn., 74 Ohio St.3d at 502. "To prove the existence of a contract, a plaintiff must show that both parties consented to the terms of the contract, that there was a `meeting of the minds' of both parties, and that the terms of the contract are definite and certain."Nilavar v. Osborn (2000), 137 Ohio App.3d 469, 484. None of the witnesses testified that the alleged settlement agreement accurately reflected the terms agreed to by the parties in the court's presence. The closest we come to this type of evidence is Steve's testimony that he and his wife received a copy of the alleged settlement agreement and they signed it and agreed with it (Tr. 34-35). Just because appellees agreed with and signed the alleged settlement agreement does not mean that these were the terms entered into in the court's presence.
 {¶ 17} A court may journalize a settlement agreement entered in open court if its terms have been entered upon the record even if a party later refuses to sign the agreement. Camsky v. Camsky (Aug. 11, 2000), 7th Dist. No. 99 BA 31. However, in this case the terms were not entered on the record. Furthermore, sufficient evidence was not presented at the evidentiary hearing to establish the terms of the agreement. Accordingly, appellant's assignment of error has merit.
 {¶ 18} For the reasons stated above, the trial court's decision is hereby reversed and the cause is remanded for further proceedings according to law and consistent with this opinion.
Waite, P.J., and Vukovich, J., concur.