[Cite as *FirstMerit Bank, N.A. v. Ashland Lakes, L.L.C.*, 2012-Ohio-549.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FIRSTMERIT BANK, N.A. | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| -vs- | Case No. 11-COA-017 |
| ASHLAND LAKES, LLC, ET AL. | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland County Court of
                             Common Pleas, Case No. 09-CFR-022

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      February 10, 2012

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant


BRETT A. WALL                        SCOTT H. KAHN
PATRICK T. LEWIS                     GREGORY J. OCHOCKI
SARA L. WITT                         The Galleria & Towers at Erieview
Baker & Hostetler LLP                McIntyre, Kahn & Kruse Co., L.P.A.
PNC Center                           1301 East Ninth Street, Suite 2200
1900 East Ninth Street, Suite 3200   Cleveland, Ohio 44114
Cleveland, Ohio 44114-3482

*Hoffman, J.*

(¶1)    Defendants-appellants Ashland Lakes, LLC, et al. appeal the June 3, 2011 Judgment Entry entered by the Ashland County Court of Common Pleas, which granted plaintiff-appellee First Merit Bank's motions for orders confirming the sheriff sale of two tracts of land.

## STATEMENT OF THE FACTS AND CASE

(¶2)    On or about June 25, 2005, Appellants Ashland Lakes, Daniel E. Inks, and David J. Slyman (hereinafter referred to collectively as "Ashland Lakes" and individually as "Inks" and "Slyman") executed a promissory note in favor of First Merit Bank ("the Bank"). The Note was secured by a mortgage on approximately one hundred thirty acres of real property located in Ashland County, Ohio ("the Property").

(¶3)    On January 12, 2009, the Bank filed a complaint in foreclosure against Appellants, seeking to foreclose on its mortgage interest in the Property. The Bank entered into three separate agreements with Ashland Lakes over the 2009 calendar year: First Standstill Agreement dated February 6, 2009; Second Standstill Agreement dated June 12, 2009; and Forbearance Agreement dated December 12, 2009. Pursuant to the 2009 agreements, the Bank agreed to forbear from exercising its rights and remedies under the loan documents. Ashland Lakes defaulted under the 2009 agreements by failing to repay the Note in full by June 30, 2010.

(¶4)    The trial court entered a decree of foreclosure on August 20, 2010, which ordered the Property be sold at public auction. Via Judgment Entry filed November 11, 2010, the trial court appointed David Bambeck, a licensed auctioneer, to conduct the auctions. The trial court also authorized the sale of the Property as five separate

parcels.  Bambeck obtained three freeholder evaluations of the Property, and scheduled the auction for December 15, 2010.

**(¶5)**　On December 14, 2010, Ashland Lakes filed a petition for bankruptcy in the U.S. Bankruptcy Court, Northern District of Ohio.  The Bank moved to dismiss the bankruptcy action, asserting such was filed in bad faith, to hinder and delay the Bank's collection efforts.  Ashland Lakes consented to the dismissal of the bankruptcy matter.  The bankruptcy court entered an agreed order of dismissal on January 6, 2011.  Bambeck subsequently rescheduled the auction for March 9, 2011.

**(¶6)**　On January 7, 2011, Inks and Slyman met with Thomas P. Krumel, Senior Vice President in the Managed Assets Department of the Bank, to discuss potential avenues to resolve Ashland Lake's indebtedness.  Inks outlined a potential solution, which included a combined cash payment with $1,000,000 in debt financing and additional monies from the partial sale of the Property.  Inks also sought the full release of all of the guarantors' liability, Inks, Slyman, and their respective spouses. The Bank agreed to consider the proposal, however, the parties did not reach an agreement on that day.  The Bank requested a binding commitment letter from the proposed lender as well as other proof the proposed transaction was viable.

**(¶7)**　On February 14, 2011, Inks e-mailed Krumel a commitment letter from Westfield Bank to finance a portion of the funds Ashland Lakes needed to meet the Bank's requirements.　Westfield Bank set forth a number of contingencies in its commitment letter, including an appraisal, environmental review, payment of delinquent taxes, and funding of $550,000 in escrow and reserves.  The commitment letter expired

on February 23, 2011. Krumel suggested Ashland Lakes purchase the appraisal completed by Aaron C. Wright.

**(¶8)** The parties had no further contacted until March 3, 2011, when Inks once again telephoned Krumel, seeking to negotiate a deal to stop the auction. Krumel verbally outlined the basic terms for such a deal, which included a $200,000 deposit and the payment of $9,000 for the Wright appraisal. Pursuant to Inks' request, Krumel issued a term sheet which set forth the broad terms and conditions upon which the Bank might agree to cancel the auction. The term sheet expressly conditioned the cancellation of the auction on the execution of a written forbearance agreement. Krumel e-mailed a draft forbearance agreement on March 7, 2011, which reflected not only the terms and conditions set forth in the term sheet, but also additional terms and conditions. The draft agreement required Ashland Lakes to make the $200,000 deposit and pay the $9,000 appraisal fee by the close of business that day.

**(¶9)** During a telephone conversation on March 7, 2011, Inks informed Krumel he was unsure he could pay the full $209,000, and asked if the Bank would accept $150,000. Krumel advised Inks to continue to try to raise the full amount, but indicated the Bank would consider accepting the $150,000 payment as well as the $9,000 appraisal fee. Later that day, Inks delivered a letter to Krumel, setting forth objections to the draft forbearance agreement and requesting several substantive changes. Krumel rejected Ashland Lakes' request to defer payment of the appraisal fee as well as its demand the Bank represent and warrant the appraisal.

**(¶10)** The following day, March 8, 2011, Inks and Krumel spoke on the telephone on at least two occasions. Krumel expressed to Inks his belief Inks' plan was

not viable, and also indicated he doubted a forbearance deal could be negotiated and completed in time to cancel the auction. Inks insisted he would have $150,000 later that day. Inks tried several times throughout the day to contact Krumel, however, Krumel was unavailable until approximately 3 p.m. Krumel subsequently telephoned Inks, and told Inks it was too late for the Bank to cancel the auction. Krumel suggested Inks bid on the property at the auction.

(¶11) The auction proceeded as scheduled with four of the five parcels of the Property sold. On March 25, 2011, the Bank filed two motions for orders confirming the sales and distribution of the sales proceeds. On April 7, 2011, Ashland Lakes filed its Supplement Motion to Set Aside the Sheriff's Sale, Opposition to First Merit's Motion to Confirm Sheriff's Sale and Request for Evidentiary Hearing. Ashland Lakes objected to the confirmation of the sales, asserting the freeholder valuations used in the auction were defective, and the auction was barred by a verbal forbearance agreement between the Bank and Ashland Lakes.

(¶12) Via Judgment Entry filed April 15, 2011, the trial court found Ashland Lakes' assertion the auction was barred lacked merit as Ashland Lake had "failed to establish that any forbearance agreement precluding the sale was ever consummated by the parties." The trial court further found a hearing on the legal sufficiency of the appraisals was appropriate and scheduled the same for April 25, 2011. Via Judgment Entry filed June 3, 2011, the trial court found the freeholder appraisal was in substantial conformity with statutory requirements, and Ashland Lakes had "failed to establish, by clear and convincing evidence, that the freeholder appraisal [was] in error." The trial court confirmed the sale of the Property and ordered distribution of the sales proceeds.

(¶13) It is from the April 15, 2011 Judgment Entry and the June 3, 2011 Judgment Entry Ashland Lakes appeals, raising as error:

(¶14) "I. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT ASHLAND LAKES, LLC'S 'AMENDED MOTION TO STAY CONFIRMATION' AND/OR 'SUPPLEMENT [SIC] MOTION TO SET ASIDE MARCH 9, 2011 SHERIFF'S SALE, OPPOSITION TO FIRSTMERIT'S MOTION TO CONFIRM SHERIFF'S SALE AND REQUEST FOR HEARING' WITHOUT CONDUCTING AN EVIDENTIARY HEARING, IN THAT SAID MOTIONS WERE PREMISED ON AN ORAL SETTLEMENT REACHED BY AND BETWEEN THE PARTIES.

(¶15) "II. WHETHER THE TRIAL COURT ERRED IN GRANTING PLAINTIFF/APPELLEE FIRSTMERIT BANK, N.A.'S MOTION FOR ORDERS CONFIRMING SALE WHEN THE APPRAISALS CONDUCTED IN CONNECTION WITH THE SALES WERE PROCEDURALLY AND SUBSTANTIVELY DEFECTIVE AND BIASED."

I

(¶16) In the first assignment of error, Ashland Lakes contends because the parties had entered into a forbearance agreement, the trial court erred in confirming the sheriff's sale without holding an evidentiary hearing pursuant to *Rulli v. Fan Co.,* 79 Ohio St.3d 374, 683 N.E.2d 337, 1997-Ohio-380.

(¶17) In *Rulli,* the Ohio Supreme Court held a trial court erred by enforcing a purported settlement agreement between the parties without first conducting an evidentiary hearing where there was a legitimate dispute between the parties as to the existence of the settlement agreement. *Id.* at 377. The *Rulli* Court stated:

**(¶18)** Where parties dispute the meaning or existence of a settlement agreement, a court *may not force* an agreement upon the parties. To do so would be to deny the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement. (Emphasis added). *Id.*

**(¶19)** Unlike the situation in *Rulli,* the trial court herein *refused to enforce* what Ashland Lakes purported to be an enforceable, oral settlement agreement between the parties, after finding the parties had never actually reached a settlement agreement.

**(¶20)** In his Affidavit, Thomas Krumel averred, on March 4, 2011, he provided Inks with a term sheet which outlined the general terms and conditions upon which the Bank would agree to cancel the auction. The term sheet expressly required the parties enter into a written forbearance agreement before the Bank would agree to forbear from exercising its rights. Krumel e-mailed Inks a copy of a draft forbearance agreement on March 7, 2011. Inks responded with a counteroffer which included six substantive changes to the draft agreement. Krumel advised Inks the Bank would not defer the payment of the appraisal fee nor include warranty provisions.

**(¶21)** In his Affidavit, Daniel Inks sets forth his account of the attempts he made to reach a forbearance agreement with the Bank. Inks indicates he provided Krumel with written objections to the agreement. Attached to Inks' Affidavit is a copy of those objections.

**(¶22)** Inks' Affidavit does not establish the parties ever reached a meeting of the minds as to all the terms. In fact, Inks states the March 4, 2011 term sheet contained a "new $200,000 deposit requirement along with other terms which had never been discussed." Affidavit of Daniel E. Inks at para. 15. Based upon the evidence, we find the trial court correctly found a settlement agreement did not exist between the parties. In the absence of such a legitimate factual dispute, the trial court was not required to conduct an evidentiary hearing. *Mack v. Polson Rubber Co.* (1984), 14 Ohio St.3d 34, syllabus.

**(¶23)** Ashland Lakes' first assignment of error is overruled.

II

**(¶24)** In the second assignment of error, Ashland Lakes maintains the trial court abused its discretion by confirming the sheriff's sale as the appraisals completed in connection therewith were procedurally and substantively defective.

**(¶25)** To set aside an appraisement, a movant must demonstrate by clear and convincing evidence not only that the appraisement was in error, but also that the movant was prejudiced thereby. *Conseco Fin. ServicingCorp. v. Taylor*, Ashland App. No. 01 COA 1442, 2002-Ohio-2504. Clear and convincing evidence has been defined as that measure of proof which is more than a mere preponderance of the evidence but less than the extent of certainty required in establishing proof beyond a reasonable doubt in criminal cases. *Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. The decision as to whether the appraisement should be set aside because it is in error is within the discretion of the trial court. *Ohio Sav. Bank v. Ambrose* (1990), 56 Ohio St.3d 53, 55, 563 N.E.2d 1388. In order to find an abuse of

discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**(¶26)** Ashland Lakes contends the appraisals were defective for three reasons. First, Ashland Lakes submits the freeholders who conducted the appraisals did not take the oath required by R.C. 2329.17(A). Next, Ashland Lakes argues the freeholders did not view a majority of the property. Finally, Ashland Lakes contends the freeholders did not have special professional qualifications which were necessary due to the unique nature of the property.

**(¶27)** R.C. 2329.17, which governs the appraisal process performed in preparation for a mortgage foreclosure sale, provides, in pertinent part:

> **(¶28)** (A) When execution is levied upon lands and tenements, the officer who makes the levy shall call an inquest of three disinterested freeholders, residents of the county where the lands taken in execution are situated, and administer to them an oath impartially to appraise the property so levied upon, upon actual view. They forthwith shall return to such officer, under their hands, an estimate of the real value of the property in money. R.C. 2329.17(A).

**(¶29)** We find Ashland Lakes has not established it was prejudiced as a result of the auctioneer's failure to administer oaths to the freeholders who appraised the Property. Further, the three freeholders subsequently testified under oath at the hearing

or through deposition testimony they conducted an impartial appraisal of the Property. For a similar result, see, *Cardinal Fed. S. & L. v. Michaels Bldg Co.*, Summit App. No. 13518, 13584, 1988 WL 87291 (Aug. 17, 1988)(no error in trial court's refusal to set aside the freeholder appraisals as the individuals were disinterested parties, and each subsequently testified under oath his appraisal was his independent opinion).

**(¶30)** We now turn to Ashland Lakes' assertion the freeholders failed to satisfy the "actual view" requirement of R.C. 2329.17(A). In *Old Kent Mortgage Co. v. Stancik*, Cuyahoga App. No. 80548, 2002-Ohio-3436, the Eight District Court of Appeals addressed the validity of a sheriff's sale where the appraisers did not conduct an "actual view" of the building's interior. The *Old Kent* Court discussed the abundant, yet inconsistent case law on the issue, and found:

> **(¶31)** To the extent the appraisers' failure to view the inside of the premises is a deviation from the terms of R.C. 2329.17, the authority suggests the sale be set aside only when the condition of the house may have an impact on the value of the real estate. To prevail, the appellant must show that he was prejudiced by the alleged failure of the appraisers to enter the house on the property at issue and view the interior before appraising the property. *Id.* at para. 11 (Citation omitted).

**(¶32)** Upon review of the record, we find Ashland Lakes has failed to show it was prejudiced by the freeholders' failure to view the entire Property. The freeholders

viewed the interior of a number of offices and units within the triplexes, as well as two single-family homes on the Property. Further, Ashland Lakes has failed to establish it was prejudiced by the freeholders' failure to walk the entire 130 acres of the Property. There is no evidence had the freeholders' estimates of value would have changed had they done so. Further, R.C. 2329.17 does not require an appraiser to conduct a pace by pace walk of the Property.

**(¶33)** With respect to Ashland Lakes' position the appraisers needed professional qualifications due to the unique nature of the property, we find such requirement is not found in R.C. 2329.17. R.C. 2329.17(A) merely requires the persons valuing a property for judicial sale be disinterested; own property in the county; and reside in the county. The freeholders in the instant action met those requirements. Any lack of qualifications on the part of the freeholder would go to the weight given to their valuation. Such does not invalidate the appraisal.

**(¶34)** Ashland Lakes' second assignment of error is overruled.

**(¶35)** The judgment of the Ashland County Court of Common Pleas is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Gwin, J. concur

s/ William B. Hoffman
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney
HON. PATRICIA A. DELANEY


s/ W. Scott Gwin
HON. W. SCOTT GWIN

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

FIRSTMERIT BANK, N.A.                    :
                                         :
       Plaintiff-Appellee                :
                                         :
-vs-                                     :          JUDGMENT ENTRY
                                         :
ASHLAND LAKES, LLC, ET AL.               :
                                         :
       Defendant-Appellant               :          Case No. 11-COA-017


For the reasons stated in our accompanying Opinion, the judgment of the Ashland County Court of Common Pleas is affirmed. Costs to Appellants.




s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney _____
HON. PATRICIA A. DELANEY


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN