[Cite as *Romanowich v. Solich Music & Piano Co.*, 2021-Ohio-1502.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Justin Romanowich,                      :

    Plaintiff-Appellant,            :

                                       No. 20AP-33
v.                                      :       (C.P.C. No. 19CVH02-1535)

Solich Music and Piano Co. et al.,      :       (REGULAR CALENDAR)

    Defendants-Appellees.           :

---

D E C I S I O N

Rendered on April 29, 2021

---

**On brief:** *Bruce M. Broyles*, for appellant.

**On brief:** *Cloppert, Latanick, Sauter and Washburn*, and *Ronald Snyder*, for appellees. **Argued:** *Ronald Snyder.*

---

APPEAL from the Franklin County Court of Common Pleas

BROGAN, J.

{¶ 1} This appeal involves the enforcement by the trial court of a settlement agreement. This litigation began on February 20, 2019, when plaintiff-appellant, Justin Romanowich, filed his complaint against defendant-appellee, Solich Piano and Music Co. (hereinafter "Solich") and defendant, Yamaha Corporation of America (hereinafter "Yamaha") alleging claims for breach of contract, unjust enrichment, defamation, invasion of privacy, and intentional infliction of emotional distress.

{¶ 2} Romanowich's complaint alleged that Solich failed to pay him at least one commission in the amount of $3,375 earned from the sale of a Yamaha piano during a sales event in September 2018. The complaint also alleged that Yamaha and Solich had circulated defamatory statements about him damaging his reputation.

{¶ 3} After the defendants filed their respective answers denying the allegations of Romanowich's complaint, Romanowich was scheduled to be deposed on July 18, 2019. At

the beginning of that deposition, counsel for the parties engaged in settlement discussions which continued for approximately two and one-half hours. (Tr. at 69.) During that time period, Romanowich reached a settlement with Yamaha. In that settlement agreement, the parties agreed that Yamaha would pay no damages to Romanowich, that Romanowich would dismiss his complaint against Yamaha, and Yamaha would agree not to seek sanctions against him. (Tr. at 16, 47.)[1] The settlement agreement between Yamaha and Romanowich was read into the record and transcribed by the court reporter who was present for the deposition. Because the settlement discussions took place at the offices of Yamaha's counsel, Yamaha's counsel was able to prepare a written settlement agreement which was signed by Romanowich.

{¶ 4} During this period, settlement discussions also took place between Romanowich and Solich. A settlement agreement was also reached between Romanowich and Solich. The terms of this agreement were that Solich agreed to pay Romanowich the sum of $1,500, and Romanowich agreed to dismiss the complaint against Solich with prejudice. (Tr. at 13, 49-50.) Because the parties were not located at either the offices of Solich's or Romanowich's counsel, a written settlement agreement was not prepared at that time. (Tr. at 16.) To memorialize the settlement agreement, the settlement agreement was placed on the record and transcribed by the court reporter. (Tr. at 50.)

{¶ 5} On July 23, 2019, Romanowich sent an email to the attention of Judge Jennifer French, John Sauter (counsel for Solich), and his own counsel Michael DeWitt, in which he sought to revoke the settlement agreement. (Mot. to Enforce Settlement Agreement, Ex. 4; Tr. at 19.) On the same day, DeWitt moved to withdraw as counsel for Romanowich, which was granted by the trial court. (Mot. for Attorney Withdraw at 1; July 24, 2019 Order at 1.) Romanowich refused to execute the settlement agreement which had been drafted by attorney Sauter to reflect the terms of the agreement reached between the parties and placed on the record on July 18, 2019. (Tr. at 18-19.)

{¶ 6} On July 25, 2019, attorney Sauter telephoned Romanowich and requested that he execute the settlement agreement. The next day, Sauter received an email from Romanowich rejecting the settlement agreement and describing it as an "insult." (Sauter

---

[1] It was determined that the employee who allegedly made a defamatory statement about Romanowich was not an employee of Yamaha.

Aff. at 2.) On August 6, 2019, Solich filed a motion to enforce the settlement agreement and, on August 27, 2019, Romanowich filed his response. On November 18, 2019, the trial court conducted a hearing on the motion.

{¶ 7}   At the hearing it was determined that Romanowich was an independent sales representative selling pianos for Yamaha at sales events at Costco locations throughout the country. Romanowich is paid a sales commission on the sale of each Yamaha piano. According to Romanowich, it was also determined that his attorney was aware that Romanowich has Asperger's Syndrome,[2] "a developmental disorder that is part of the broader category called autism spectrum disorder." (Appellant's Brief at 5; Romanowich Aff. at 2.)

{¶ 8}   During the settlement discussion between DeWitt and Romanowich, DeWitt saw Romanowich hit himself several times in the head, cry, make noises, and yell at himself. (Tr. at 63.) The following dialogue occurred when DeWitt testified:

> Q.  Okay. Did Mr. Romanowich advise you that he was being triggered?
>
> A.  I'm not sure that he advised me that he was being triggered. I have had enough life experience that I think if someone is hitting themselves in the head and calling themselves names, that something is amiss. But I'm not trained, I don't know.

(Tr. at 65.) DeWitt testified about Romanowich's behavior and testified that "during that behavior he never told me don't settle the case." (Tr. at 53.) DeWitt testified that Romanowich "began hitting himself in the head, calling himself an idiot, said that everyone -- that he thinks he's stupid, that he often has suicidal thoughts." (Tr. at 54.) DeWitt testified as follows:

> Q.  Okay. So with regards to the Solich Music settlement, did that occur prior to or after the conduct of Mr. Romanowich that would be described as hitting himself, saying things and tearing up?
>
> A. It took place after that.

(Tr. at 70.) DeWitt testified that, after about twenty minutes to one-half hour, Romanowich calmed down and DeWitt had authority to settle with Solich:

---

[2] We note that at the hearing, Romanowich's attorney appears to withdraw his question to DeWitt's about his knowledge of Romanowich's Asperger's diagnosis. *See* Tr. at 66-68.

Q. And all I'm trying to find out is how much time elapsed from when he was in the throes of that and when you believe you had authority from Mr. Romanowich?

A. I'm going to say probably 20 minutes to half an hour.

(Tr. at 71-72.) In discussing settlement with Romanowich, DeWitt informed Romanowich that only Romanowich could settle the case. However, DeWitt added: "If you go forward, I'm not going to represent you. I'll seek the Court's permission to withdraw from the case." (Tr. at 45.)

{¶ 9} Based on DeWitt's belief that he had authority to settle the case against Solich, the parties' agreement was read into the record. Romanowich entered the conference room briefly but was not present when the agreement was read into the record and did not give his assent on the record. (Tr. at 17.) DeWitt then testified that Romanowich approached him after the settlement was read into the record, stating:

We were really in the process of sort of really cleaning up. It had been put on the record. The case was settled.

And [Romanowich] then * * * came up and said, I don't want to go through with it. And so I said, well, it's a little late, but let's talk about this.

(Tr. at 51.) "He never told me to go tell them he wasn't going forward with it after that discussion." (Tr. at 51.)

{¶ 10} Romanowich testified that he objected to the amount Solich offered and stated that the amount was "ridiculously low," but DeWitt said "you got to take it." (Tr. at 86.) Romanowich testified that it felt like DeWitt "completely turned to the other side and went to bat for the other team." (Tr. at 87.) Romanowich testified that DeWitt raised his voice and berated him. (Tr. at 87.) Romanowich testified he attempted to discuss the issues regarding the strength of his case with DeWitt, but his attorney simply kept telling him they "weren't going to pay"; "you don't have a case"; "[y]ou're not going to win, it is just impossible." (Tr. at 89.) Romanowich testified that he never agreed to settle for $1,500. (Tr. at 92.) "Mr. DeWitt said it would be $1,500 and then if I had the ability to prove all of these other deals and all the other money, that he had authorization from Mr. Sauter to then pay me on those funds as well." (Tr. at 93.) Romanowich continued:

> So I think at that point -- and, correct, at that point I said yes to the agreement, but I also thought that at that time that I would at least be able to get some additional [sic] out of Solich. So when I'm saying no, my rational thought, my decision after that point is no and before this fit happened it was still no. So it was after the point that I heard, you don't have a case, you're not going to win, et cetera that I felt strong-armed and coerced into an agreement of that.

(Tr. at 93-94.)

{¶ 11} Romanowich testified that he did authorize DeWitt to accept $1,500 but that it was during the middle of a terrible fit he was having; and that he retracted that authority the same day. (Tr. at 95-96.) Romanowich testified that he was still sobbing immediately before the settlement was read into the record; that he did not calm down for "many hours later"; and that he was unable to make a rational decision. (Tr. at 96.)

{¶ 12} DeWitt testified on rebuttal that there were discussions regarding something additional to the $1,500 settlement. He told Romanowich those additional claims were not covered by the settlement agreement. (Tr. at 104, 108-12.) DeWitt further testified that the point at which Romanowich authorized the settlement was after he had calmed down, and was twenty to thirty minutes after the episode had ended. (Tr. at 71-72.)

{¶ 13} On December 18, 2019, in granting Solich's motion to enforce the settlement agreement, the trial court stated:

> In the case at hand, the Court conducted a hearing on Defendant Solich's Motion to Enforce Settlement, and heard testimony from (1) Mr. Sauter, Defendant Solich's former attorney; (2) Mr. DeWitt, Plaintiff's former attorney; and (3) Plaintiff. All three were present on July 18, 2019 when the alleged settlement occurred. Based on this evidence provided at the hearing, the court finds that Mr. DeWitt had the apparent and actual authority to settle the claims between [Romanowich] and Defendant Solich for $1,500. Mr. DeWitt testified that [Romanowich] was indeed agitated and upset at one point of the conference, but that Mr. DeWitt had talked with [Romanowich], and [Romanowich] had calmed down and agreed to the settlement before it was memorialized by Mr. DeWitt and Mr. Sauter on the record. See [Tr. at 52-59, 71-73.] Mr. DeWitt further explained how he discussed both settlements with [Romanowich], and explained to [Romanowich] that opposing counsel had presented him with certain discovery that made several of [Romanowich]'s claims unlikely to be ultimately successful, and that opposing counsel

> had also threatened to request sanctions if [Romanowich] chose to proceed with his deposition and case considering this new information. *Id.* at 33-34. The Court further notes that although [Romanowich] testified that certain additional monies were also discussed and were to be included in the settlement, Mr. DeWitt clarified that although these additional monies were discussed, they were outside the parties' settlement agreement. *Id.* at 84-86, 93, 101, 104, 108-112. Mr. DeWitt testified that if [Romanowich] could substantiate these additional claims, Mr. Sauter had agreed that Defendant Solich would later consider it. *Id.*

(Trial Ct. Decision at 5-6.) The trial judge stated she found DeWitt's testimony and version of the events to be credible, and she further found that DeWitt had the actual authority on behalf of Romanowich to enter into the July 18, 2019 settlement agreement with Solich. Romanowich filed a notice of appeal on January 10, 2020.

{¶ 14} In his first assignment of error, Romanowich contends the trial court erred in finding he had given his attorney express authority to settle the case with Solich for $1,500. Romanowich points to his testimony that he wasn't going to settle "before this fit happened * * *. So it was after the point that I heard, you don't have a case, you're not going to win, et cetera that I felt strong-armed and coerced into an agreement of that." (Tr. at 94.) Romanowich argues that the trial court erred in failing to find that he revoked the settlement authority.

{¶ 15} Romanowich argues that no reasonable attorney would have believed that he still had authority to settle the case after he had acted in such an unusual manner in front of the attorney who knew he was diagnosed with Asperger's. Romanowich points out that DeWitt told him about the settlement after he calmed down, approximately 20 minutes after his self-described fit. (Appellant's Brief at 24, citing Tr. at 72.) Finally, he notes that despite his unusual conduct, his attorney did not feel the need to have him state on the record that he agreed with the terms of the settlement agreement.

{¶ 16} He further argues that, even if the authority to settle the case was given to his attorney, it was immediately revoked prior to him communicating it to opposing counsel. Romanowich contends that the agreement was repudiated within minutes of it being placed on the record. He also notes that he was communicating with opposing counsel and the Court within a few days after the settlement was placed on the record and before any written agreement was executed.

{¶ 17} DeWitt testified that Romanowich never told him to go tell opposing counsel that the settlement was off after their discussions.

{¶ 18} In his second assignment of error, Romanowich contends the trial court's decision is against the manifest weight of the evidence. In support of his argument he cites the case of *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, wherein the court explained the meaning of "weight of the evidence." *Id.* at ¶ 7.

> Nevertheless, even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence:
>
> "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' "

(Emphasis sic.) *Eastley* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). Romanowich argues the trial court clearly lost its way in finding that attorney DeWitt had authority to settle the case against Solich for $1,500. We disagree.

{¶ 19} This court finds there is evidence in the record to support the trial court's finding that DeWitt had actual authority from Romanowich to settle his lawsuit against Solich for $1,500. The trial court was in the best position to evaluate the credibility of Romanowich and his former counsel DeWitt. DeWitt testified that Romanowich gave him permission to settle the case 20 minutes after he calmed down from his self-described "fit." (Appellant's Brief at 24.) Romanowich himself admitted that "if [he] had the ability to prove all these other deals and all the other money, that [attorney DeWitt] had authorization from [attorney] Sauter to then pay me on those funds as well." (Tr. at 93.) There is evidence in the record that counsel and the parties engaged in extensive discussions for over two hours regarding Romanowich's claims against Solich. The deposition of Romanowich was delayed to see if a settlement could be reached.

{¶ 20} The trial court was in the best position to determine whether there had been a "meeting of the minds" in reaching the settlement. *See Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997).

{¶ 21} Appellants' two assignment of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN, P.J. and MENTEL, J., concur.

BROGAN, J., retired, of the Second Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____