[Cite as *HSBC Bank USA N.A. v. Rao*, 2024-Ohio-310.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| HSBC Bank USA NA, | : | |
| Plaintiff-Appellee, | : | No. 23AP-293 |
| | | (C.P.C. No. 15CV-7168) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Gita Rao et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on January 30, 2024

**On brief:** *DeBlasis Law Firm*, *LLC*, and *Rick D. DeBlasis* for HSBC Bank USA NA. **Argued:** *Rick D. DeBlasis*.

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paul M. Stickel* for Franklin County Treasurer. **Argued:** *Paul M. Stickel*.

**On brief:** *Johnson & Core LLC*, and *Clayborne B. Johnson* for Ganesh Rao. **Argued:** *Ganesh Rao*.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Ganesh Rao, appeals from the April 18, 2023 order of the Franklin County Court of Common Pleas denying his motion to enforce a settlement agreement. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This case began in 2015, when plaintiff-appellee, HSBC Bank USA, National Association, as Trustee for Wells Fargo Home Equity Asset-Backed Securities 2005-1 Trust, Home Equity Asset-Backed Certificates, Series 2005-1 ("HSBC"), commenced foreclosure

proceedings in rem against the Dublin, Ohio residence of Gita and Ganesh Rao over a defaulted mortgage loan.  In addition to the Raos, HSBC named several other defendants in the complaint who potentially had an interest in the property through other mortgages or liens.  The specific circumstances of the foreclosure are summarized in greater detail in our decision affirming the trial court's foreclosure judgment, *HSBC Bank USA v. Rao*, 10th Dist. No. 20AP-448, 2021-Ohio-3745 ("*Rao I*").  Ultimately, the trial court issued a judgment and decree in foreclosure on November 2, 2017, finding the bank was entitled to foreclose on the property after the Raos defaulted on the terms of the loan.  The property was then sold at a sheriff's auction on July 6, 2018.  (July 6, 2018 Sheriff's Return of Order of Sale.)  Although the trial court confirmed the sale shortly thereafter, the sale was later vacated after HSBC notified the court by motion that the buyer failed to complete the purchase.  (Mar. 4, 2019 Decision and Entry.)  Thereafter, the property went to auction a second time and was sold to Innovation Hospitality Group, LLC ("Innovation Hospitality") for $379,500.  (Nov. 15, 2019 Sheriff's Return of Order of Sale.) The trial court confirmed this sale in an amended entry issued on March 6, 2020.[1] (Mar. 6, 2020 Am. Confirmation of Sale Entry.)

{¶ 3}   Mr. Rao subsequently filed a motion to set aside the sale on April 17, 2020, and a motion to vacate the underlying foreclosure judgment on June 20, 2020.  The trial court, construing both motions as requests for relief from judgment under Civ.R. 60(B), denied each motion in separate entries issued on August 25, 2020.  Mr. Rao appealed from those entries and we affirmed, finding there was no abuse of discretion when Mr. Rao failed to allege any deficiencies in the procedure of the sale and failed to allege a meritorious defense against foreclosure.[2] *Rao I* at ¶ 16-19.

---

[1] In later filings, both the parties and the trial court refer to three versions of this entry: the original order issued on January 21, 2020, the first amended order issued on March 6, 2020, and the second amended order issued on March 16, 2020. On appeal, the record only contains the March 6, 2020 confirmation of sale entry. While this does not materially affect the case, we note the existence of the other two entries for clarity's sake due to their mention in the briefs.

[2] The trial court considered the motion to set aside the sheriff's sale as a request for relief from judgment pursuant to Civ.R. 60(B), despite not being titled as such in the case caption. On appeal, this court chose to "similarly construe Rao's motion," finding a trial court may treat an improperly captioned motion as the appropriate vehicle for relief if the substance of the motion clearly indicates its intended purpose. *Rao I* at ¶ 14.

{¶ 4}   On March 24, 2022, HSBC moved the trial court once more for an order vacating the sale under R.C. 2329.30 due to the purchaser's failure to pay the remaining balance within 30 days of the successful bid.  The trial court granted the requested relief after Mr. Rao and the purchaser failed to file briefs in opposition.  (May 27, 2022 Order to Vacate.)  One month later, HSBC filed a motion for an order distributing the funds held by the Sheriff "in satisfaction of its judgment entered herein on November 2, 2017, on the grounds that the parties have reached a settlement of all issues in this case."  (June 21, 2022 Pl.'s Mot. at 1.)  In its motion, HSBC explained that on May 27, 2022, the same day the court granted the order to set aside the November 2019 sale, Innovation Hospitality paid the remaining balance on the purchase price, resulting in a total amount of $380,856 on deposit with the court.  (*Id*. at 1-2.)  HSBC, Mr. Rao, and Innovation Hospitality—which HSBC refers to as "[t]he parties" in the motion—consequently reached a settlement in the matter, wherein "***all sums on deposit, after the payment of court costs, will be distributed to Plaintiff*** in full and final satisfaction of all sums due it" as determined in the November 2, 2017 decree of foreclosure.  (Emphasis added.)  (*Id*. at 2.)  HSBC withdrew the motion before the trial court could rule on the matter, explaining that the parties' "potential settlement ha[d] fallen through."  (Aug. 3, 2022 Pl.'s Withdrawal of Mot. at 1.)

{¶ 5}   On September 30, 2022, Mr. Rao filed a motion to enforce the purported settlement agreement memorialized in the withdrawn June 21, 2022 motion.  In his motion, Mr. Rao alleged that HSBC reneged on the agreed purchase price and sought to increase the amount to $415,000 in ensuing negotiations between the parties.  (Sept. 30, 2022 Mot. at 6.)  Additionally, Mr. Rao stated that HSBC provided no explanation for the increased demand, but it might relate to "back property taxes that might be owed on the subject realty."  (*Id*. at 7.)  Mr. Rao asserted in his motion that the purported settlement terms allocated the negotiated purchase price of $380,856 to the lienholders listed in the foreclosure decree in the following amounts: $3,905 to the Clerk of Courts; $5,692.50 to the Franklin County Sheriff's Office; $16,058.05 to the Franklin County Treasurer "for 2019 real estate taxes;" and $353,844.45 to HSBC.  (*Id*. at 3-4.)  In addition to other exhibits, Mr. Rao submitted an affidavit in support of the motion, averring, in relevant part, that he is "to pay for any property taxes after 2019 pursuant to a payment plan I understand that I

reached with the Franklin County Treasurer's Office." (Sept. 30, 2022 Mot., Ex. A, Rao Aff. at ¶ 4c.)

{¶ 6} Both HSBC and the Franklin County Treasurer filed opposition to the motion. The Treasurer specifically disputed Mr. Rao's attestation that he had an agreement with the office over the unpaid property taxes that had accumulated since the foreclosure decree and now totaled $52,579.17. (Oct. 13, 2022 Memo Contra at 4.) To rebut Mr. Rao's claim, the Treasurer submitted the affidavit of Patricia Froehlich, the supervisor of the Delinquent Tax Contracts Division. Ms. Froehlich averred that Mr. Rao requested delinquent tax payment plans from the office in 2021 and 2022. (Oct. 13, 2022 Memo Contra, Ex. C, Froehlich Aff. at ¶ 3.) Both payment plan offers were eventually rescinded by the Treasurer after Mr. Rao failed to sign and return them within the allotted time frame. (*Id.*) She averred that no other agreement concerning the payment of delinquent taxes was currently in place. (*Id.*) Ms. Froehlich further stated that the Treasurer's policies would not permit the office to enter into a delinquent tax contract with the prior owner of a property in foreclosure after a court-ordered judicial sale is finalized. (Oct. 13, 2022 Memo Contra, Ex. C, Froehlich Aff. at ¶ 4.)

{¶ 7} In their memorandum contra, HSBC similarly argued the June 21, 2022 motion was not evidence of a global settlement agreement. In particular, HSBC cited a June 21, 2022 email exchange between the attorneys for Mr. Rao, HSBC, Innovation Hospitality, and Innovation Hospitality's assignee, KVP Investments ("KVP"). (Oct. 18, 2022 Memo Contra, Ex. A.) Around 11:00 a.m., HSBC's lawyer circulated a courtesy copy of the motion for the distribution of funds. (*Id.* at 3.) No representative for the Treasurer was included in the exchange. That afternoon, counsel for KVP sent a response that raised concerns about the motion's treatment of delinquent real estate taxes. Several days later, on June 24, 2022, HSBC responded with a new version of the motion and stated, "I do not have final approval from my client as of today." (*Id.* at 1.) And, as previously referenced, the June 21, 2022 motion was ultimately withdrawn in August before the trial court issued a ruling.

{¶ 8} On April 18, 2023, the trial court denied the motion to enforce the settlement agreement, finding the parties failed to reach an agreement during their negotiations for two reasons. First, the trial court found the emails Mr. Rao submitted in support of his

motion did not demonstrate that the parties had resolved their disagreements, but, at best, "indicate[d] an offer of an agreement." (Apr. 18, 2023 Decision and Entry at 3.) Second, the trial court was persuaded that the Treasurer would not have agreed to a settlement that failed to account for payment of outstanding property taxes, the balance of which was substantiated by tax records and Ms. Froehlich's affidavit. (*Id.* at 4.) The trial court concluded with an acknowledgment that the disposition of the case had been unnecessarily prolonged by Mr. Rao, and now that the foreclosure judgment had been affirmed on appeal, the case was closed and "the property in question will be sold." (*Id.*)

{¶ 9} It is from this order that Mr. Rao filed the instant appeal.

## II. Assignment of Error

{¶ 10} Mr. Rao raises the following assignment of error for our review:

> The lower court erred as a matter of law and abused its discretion by denying Appellant, Ganesh Rao's Motion to Enforce Settlement Agreement.

## III. Applicable Law

### A. Standard of Review

{¶ 11} Under Ohio law, a settlement agreement is a contract. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997). As such, a valid settlement agreement requires an offer, acceptance, and a meeting of the minds, demonstrated in terms that are "reasonably certain and clear." *Id.* " 'Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.' " *Id.*, quoting 1 Corbin on Contracts, Section 4.1, 525 (Rev.Ed. 1993). In *Rulli*, the Supreme Court of Ohio advised "that courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants." *Id.*

{¶ 12} For matters of contract, this court applies the standard of review appropriate for the issue presented. *Wallick Properties Midwest, LLC v. Jama*, 10th Dist. No. 20AP-299, 2021-Ohio-2830, ¶ 11. If the "issue is a question of contract law, we review whether the trial court's order is based on an erroneous standard or misconstruction of the law." *Id. See also Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996). However, unlike questions of law, "if there is an evidentiary

issue in dispute, '[i]t is within the sound discretion of the trial court to enforce a settlement agreement and this court has no authority to set aside the judgment of the trial court where the record contains some competent, credible evidence to support its decision regarding the settlement.' " *Zinsmeister v. Ohm*, 10th Dist. No. 21AP-684, 2022-Ohio-4787, ¶ 8, quoting *Associated Estates Realty Corp. v. Roselle*, 10th Dist. No. 98AP-1133, 1999 Ohio App. LEXIS 2831, *9 (June 22, 1999). Here, we are faced with two separate questions. First, we must address whether the trial court properly concluded that the Treasurer would have been a necessary party to a purported settlement agreement. And if so, we must also determine whether the trial court's finding that the Treasurer was not a party to the purported settlement agreement is supported by competent, credible evidence in the record.

### B. Judicial Foreclosures

{¶ 13} Our resolution of the first question is guided by the relief sought. The real property at issue in this case was subject to a foreclosure action. Judicial foreclosure is subject to a comprehensive statutory scheme. *See* R.C. 2329.01 *et seq*. Foreclosure actions proceed in two stages, both of which result in final, appealable orders: the decree of foreclosure and the confirmation of sale. *Farmers State Bank v. Sponaugle*, 157 Ohio St.3d 151, 2019-Ohio-2518, ¶ 18, citing *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, ¶ 39. The decree of foreclosure determines whether the moving party is entitled to foreclosure, and, if so, determines the extent of each lienholder's interest, sets out the priority and validity of all asserted liens, and orders the property to be sold so the resulting sale proceeds may be used to satisfy the liens in order of priority. *Id*. "Once the foreclosure decree is final and upon completion of the appeals process, the rights and responsibilities of the parties under the foreclosure decree may no longer be challenged." *Id*. Thus, the proper time to challenge lien priority is on appeal from the foreclosure order. *Roznowski* at ¶ 33.

{¶ 14} The second stage of proceedings is the enforcement action of the foreclosure decree. Once the trial court is satisfied a sheriff's sale occurred in conformance with law, it may issue the order confirming the sale and ordering the distribution of proceeds in accordance with the priority set out in the foreclosure decree. *Sponaugle* at ¶ 19.

{¶ 15} In every action seeking the judicial sale of real estate that is subject to a state lien, the party seeking the sale must include the state lienholder as a party defendant. R.C. 2329.192(B)(1). Any subsequent orders confirming the sale or distributing sale proceeds must protect the state lien in priority "as if the state had appeared in the action and filed an answer asserting the validity of the state lien." R.C. 2329.192(B)(5). Following a judicial sale, "the interest of any undisputed state lien shall transfer to the proceeds of the sale of the real estate, and the state lienholder shall be entitled to payment from the proceeds of the sale of the real estate in accordance with the state lienholder's priority." R.C. 2329.192(C). A state lienholder receives priority over other lienholders from the proceeds of a judicial sale. R.C. 5721.10.

### III. Analysis

{¶ 16} The first question we must answer is whether the trial court properly concluded that an agreement could not be reached without the consent of all parties having an interest in the sale proceeds. Here, a final judgment had already been entered finding HSBC was entitled to foreclose on the property, and setting forth existing liens in order of priority. This entry was affirmed on appeal. *See Rao I.* In the trial court's November 2, 2017 foreclosure decree, the Franklin County Treasurer was found to have an interest in the property that was senior to all other lienholders, including the interest held by HSBC. (Nov. 2, 2017 Finding and Decree in Foreclosure at 3.) Therefore, as to the first question above, we find the trial court properly concluded that any agreement regarding the distribution of sale proceeds would require the Treasurer's consent, as the priority lienholder.

{¶ 17} We thus proceed to the second question—whether the trial court properly found that the Treasurer did not agree to the purported settlement agreement. The terms of the purported settlement contained in the June 21, 2022 motion for distribution of funds request an order "(1) distributing to [HSBC] all sums on deposit, after the payment of court costs; (2) purging [Innovation Hospitality] of all contempt; and (3) entering satisfaction of the Finding and Decree in Foreclosure (*in* rem) entered November 2, 2017." (June 21, 2022 Pl.'s Mot. at 2.) Exhibits attached to Mr. Rao's motion to enforce the settlement agreement and HSBC's memorandum in opposition include individual emails documenting negotiations between himself, HSBC, Innovation Hospitality, and KVP. But noticeably absent from the purported settlement negotiations and the language of the motion for

distribution of funds is consent from the office of the Treasurer. The trial court relied, in part, on this evidence to find that the Treasurer was not involved in negotiations and did not consent to a global settlement agreement. (Apr. 18, 2023 Decision and Entry at 2-3.) Together with the affidavit of Ms. Froehlich and the lack of any exhibits indicating the Treasurer's involvement in settlement negotiations, we find the record contains competent, credible evidence to support the trial court's factual finding.

{¶ 18} Furthermore, the trial court's finding that no contract was actually formed is supported by KVP's emailed response to the motion, in which counsel did not indicate consent to the memorialized terms. Instead, counsel identified a problem with the order of distribution: "[I]t was my understanding that distributions under the agreed order would be made per the Entry Confirming Sale. The January 21, 2020 Entry Confirming Sale included a distribution to the county treasurer for 2019 real estate taxes. The draft motion for distribution and agreed order do not include this." (Oct. 18, 2022 Memo Contra, Ex. A at 1.) No binding contract can form when one of the parties to an agreement withholds acceptance of its terms and believes further action is required before the agreement can be finalized. *See Kertes Ents., L.L.C. v. Sanders*, 8th Dist. No. 109584, 2021-Ohio-4308, ¶ 14, quoting *Weston, Inc. v. Brush Wellman*, 8th Dist. No. 65793, 1994 Ohio App. LEXIS 3349, *14 (July 28, 1994) (" 'In other words, as long as both parties contemplate that something remains to be done to establish a contractual relationship, there is no binding contract.' "). *See also Cambodian Buddhist Soc. v. Ke*, 10th Dist. No. 01AP-731, 2002-Ohio-2766, ¶ 27 (noting the exchange of drafts alone is not sufficient evidence of acceptance or a meeting of the minds on the essential terms of an agreement).[3]

{¶ 19} Lastly, the terms contained in the withdrawn motion to distribute funds are not the same as the terms contained in Mr. Rao's motion to enforce the settlement agreement. The June 21, 2022 motion that Mr. Rao seeks to enforce plainly states that "all sums on deposit, after the payment of court costs, will be distributed to [HSBC] in full and final satisfaction of all sums due it." (June 21, 2022 Pl.'s Mot. at 2.) No distributions to other lienholders are contemplated. In comparison, the motion to enforce the settlement

---

[3] We are further persuaded by the timing of the email conversation. The June 21, 2022 motion was time-stamped 10:54 a.m. at the time of filing. HSBC's email circulating the motion was sent at 11:01 a.m.—after the motion was filed. (*See* June 21, 2022 Pl.'s Mot.; Oct. 18, 2022 Memo Contra, Ex. A at 3.)

agreement states that HSBC would receive $353,844.45 after distributions to the state lienholders, including the Treasurer. (Sept. 30, 2022 Mot. at 4.) Mr. Rao makes no attempt to reconcile these patently different terms.

{¶ 20} Because no enforceable settlement agreement was entered into by the necessary parties, we affirm the decision of the trial court denying Mr. Rao's motion.

{¶ 21} While not the basis for the trial court's decision, we also note that the alleged settlement agreement would not have been appropriate under the judicial foreclosure process set forth in statute. As discussed above, a foreclosure action proceeds in two stages: the foreclosure judgment and the judicial sale. In seeking enforcement of a settlement between himself, HSBC, and Innovation Hospitality, Mr. Rao appears willfully blind to the trial court's earlier judgment entry setting forth the priority of lienholders in this case. Where the foreclosure decree has already been issued and affirmed on appeal, the parties may not negotiate the distribution of sale proceeds without agreement from each lienholder. Mr. Rao may not abrogate the interests of the lienholders through a settlement agreement that does not account for their rights.

## IV. Disposition

{¶ 22} Based on our review of the record, we conclude the trial court's decision to deny the motion to enforce the settlement agreement was in accordance with law and supported by competent, credible evidence in the record. We overrule Mr. Rao's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

———————————