[Cite as *Smith v. PGN OP Echo, L.L.C.*, 2025-Ohio-185.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [Bert Douglas Smith, Executor] of the Estate of Edra Smith, deceased, | : | |
| | : | |
| Plaintiff-Appellant, | : | No. 24AP-280 |
| | : | (C.P.C. No. 21CV-7767) |
| v. | | |
| | : | (ACCELERATED CALENDAR) |
| PGN OP Echo, LLC, d.b.a. Solivita of Echo Manor, et al., | : | |
| | | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 23, 2025

**On brief:** *The Dickson Firm, L.L.C.*, and *Blake A. Dickson*, for appellant. **Argued:** *Blake A. Dickson.*

**On brief:** *Marshall, Dennehey, Warner, Coleman & Goggin, Leslie M. Jenny*, and *Tracey M. McGurk*, for appellees PGN OP Echo, LLC, and Deborah Young. **Argued:** *Tracey M. McGurk.*

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

**{¶ 1}** Plaintiff-appellant, Bert Douglas Smith, Executor of the Estate of Edra Smith, deceased, appeals from a judgment of the Franklin County Court of Common Pleas overruling appellant's objections to a magistrate's decision and adopting the decision of the magistrate granting the motion of defendants-appellees, PGN OP Echo, LLC, and Deborah Young, to enforce settlement agreement.

**I. Facts and Procedural History**

{¶ 2}  Appellant is the current personal representative of the estate of Edra Smith, who passed away on January 5, 2021.  On December 15, 2021, Rhonda Kay Bower, who at the time was the personal representative of the estate of Edra Smith, filed a wrongful death and survivorship action against appellees.[1]  On February 17, 2022, appellees filed an answer, and the parties subsequently engaged in discovery.  On November 6, 2023, appellant filed a notice of substitution of counsel.

{¶ 3}  On November 28, 2023, appellees filed a motion to enforce settlement agreement.  In the motion, appellees argued that on October 3, 2023, counsel for both parties discussed an offer of settlement made by appellees as full and final settlement of the case.  Appellees asserted that counsel for appellant sent email correspondence to counsel for appellees indicating their client would accept appellees' settlement offer and that such settlement would include both survival and wrongful death claims, contingent upon probate court approval.  According to appellees, counsel for appellees confirmed the settlement amount and terms; further, counsel for appellant indicated they would file the application for probate court approval, and counsel for appellant notified the trial court the case was resolved and a dismissal would be submitted following probate court approval.

{¶ 4}  Appellees argued that, one month later, new counsel for appellant notified counsel for appellees that the case was not settled because there had been no probate court approval.  In their motion to enforce, appellees requested that the trial court "find that the parties entered into a valid and enforceable settlement agreement for which [appellant] is required to submit an application for probate court approval."  (Nov. 28, 2023 Defs.' Mot. to Enforce Settlement Agreement at 4.)

{¶ 5}  On December 1, 2023, appellant filed a brief in opposition to appellees' motion to enforce settlement agreement, asserting the parties never entered into a settlement agreement.  Appellant further argued that, even if a settlement agreement existed, no application seeking probate court approval had ever been filed.

---

[1] Rhonda Kay Bower was the personal representative of the estate of Edra Smith throughout the proceedings before the trial court.  Following the filing of her notice of appeal, Rhonda Kay Bower filed a motion to substitute Bert Douglas Smith as the personal representative of the estate of Edra Smith.  For ease of discussion, except when referring to Rhonda Kay Bower individually, throughout this decision we shall refer to both estate representatives (i.e., Rhonda Kay Bower and Bert Douglas Smith) as "appellant."

{¶ 6} On January 9, 2024, a magistrate of the trial court conducted a hearing on the motion to enforce settlement. On January 11, 2024, the magistrate filed a decision granting appellees' motion to enforce settlement.

{¶ 7} In that decision, the magistrate outlined the testimony and evidence admitted during the hearing, noting that appellees presented the testimony of "Jonathan Stoudt," a "former" counsel of appellant, and that appellees also "reoffered the exhibits already attached to their Motion [to Enforce Settlement Agreement]," identified as "Exhibit[s] A – E." (Jan. 11, 2024 Mag. Decision at 1.) Appellant "offered the testimony of B[e]rt (Doug) Smith." (Mag. Decision at 1.)[2] Appellant also offered "Exhibit 1," a copy of an email, dated October 24, 2023, "from Mr. Stoudt to his then client Ms. Bower." (Mag. Decision at 1.)

{¶ 8} The magistrate's decision included the following findings of fact. Appellees' Exhibit 1 (Magistrate's Exhibit A) "was an email from Mr. Stoudt to the counsel for [appellees] dated 10-4-23." (Mag. Decision at 2.) The magistrate quoted language from that email, which included Stoudt's representation that " 'our clients * * * are willing to accept a settlement of $75,000 * * * in this matter,' " and that " '[s]uch a settlement would include both survival and WD claims and be contingent on our getting probate court approval.' " (Mag. Decision at 2, quoting Defs.' Ex. 1, Mag. Ex. A.) Stoudt testified that, "prior to sending Exhibit A, he had the Estate's representative's authority to settle for those terms. The Estate's representative was Ms. Bower." (Mag. Decision at 2.)

{¶ 9} The magistrate noted that appellees' "Exhibit B is the email from the counsel for [appellees] confirming the agreement with no material changes suggested." (Mag. Decision at 2.) Stoudt "testified that he acted consistent with the agreement by contacting the court confirming that there was a resolution of the case subject to the probate court's approval." (Mag. Decision at 3, citing Defs.' Ex. 4, Mag. Ex. D.) The magistrate found that Exhibits "A and C confirmed that it was [appellant's] obligation to seek the required approval from the probate court." (Mag. Decision at 3.)

---

[2] While the magistrate, for purposes of admitting exhibits during the hearing, designated these exhibits by letter (i.e., Exhibits A – E), the defendants, in their motion to enforce settlement, referenced these same exhibits by number. For ease of reference, except when quoting from the magistrate's decision, we will refer to these exhibits by their number but parenthetically include the corresponding letter designation.

{¶ 10} Stoudt further testified that, "because he had his client's authority to settle on the terms expressed within Exhibit A[,] he informed the court that the case had been resolved." (Mag. Decision at 3.) Stoudt's "testimony concerning his client's approval of the settlement was uncontested by any valid evidence to the contrary." (Mag. Decision at 3.) When Stoudt "was asked if he had Ms. Bower's authority to send the terms in Exhibit A, he responded affirmatively." (Mag. Decision at 3.) To Stoudt's "credit," the evidence indicates "he informed his client that he would not be able to represent the estate further if the agreement was repudiated." (Mag. Decision at 3, citing Ex. 1.)

{¶ 11} The magistrate found Stoudt's testimony to be "credible." (Mag. Decision at 3.) The magistrate observed that appellant's witness, Bert Douglas Smith, "testified that he never agreed to settle the case on the terms mentioned." (Mag. Decision at 3.)

{¶ 12} Based upon the evidence presented, the magistrate found "the parties reached a binding agreement to resolve the case as of October 4, 2023." (Mag. Decision at 4.) More specifically, the magistrate found "Exhibit A was an offer to settle," containing "all of the necessary material terms and conditions," that "Exhibit B's demand was evidence of the necessary acceptance," and therefore "[a] contract was formed." (Mag. Decision at 4.) The magistrate rejected appellant's claim there was "no meeting of the minds," concluding that "[t]here was an enforceable agreement between the parties to resolve the case – subject to probate court approval." (Emphasis omitted.) (Mag. Decision at 8.)

{¶ 13} The magistrate addressed appellant's further contention "that 'subject to probate court approval' means there is no enforceable agreement between the parties to settle the case – ever," and that the agreement "is only binding on the parties once the probate court accepts it." (Mag. Decision at 8.) The magistrate rejected appellant's argument, holding that parties may enter into a valid enforceable contract to seek probate court approval. The magistrate therefore granted the motion to enforce settlement agreement.

{¶ 14} On January 24, 2024, appellant filed objections to the magistrate's decision. In those objections, appellant challenged the magistrate's determination that the parties reached an agreement to settle the case as of October 4, 2023, arguing that material terms of the settlement agreement were never agreed upon. Appellant further argued there can

be no binding settlement agreement of a wrongful death case without probate court approval.

{¶ 15} On April 3, 2024, the trial court filed a decision overruling appellant's objections to the magistrate's decision. In its decision, the trial court noted "no transcript was submitted," and that appellant "attached evidence to the Objection that was not presented in the motion briefing or at the hearing." (Apr. 3, 2024 Decision at 2.) With respect to appellant's first objection, asserting the parties did not have a binding agreement, the trial court found such objection "not well-taken," as it was "based on the magistrate's factual findings and cites only the additional evidence that is not being considered." (Decision at 3.)

{¶ 16} The trial court also addressed and rejected appellant's objection that "there can be no binding settlement agreement of a wrongful death claim without probate court approval." (Decision at 3.) The trial court therefore overruled appellant's objections to the magistrate's decision.

## II. Assignment of Error

{¶ 17} Appellant appeals and assigns the following single assignment of error for our review:

> The Trial Court erred in its Order dated April 3, 2024 holding that there is an enforceable settlement of this case.

## III. Analysis

{¶ 18} Appellant's single assignment of error raises two primary issues on appeal. Appellant first contends the trial court erred in overruling his objections to the magistrate's determination that the parties entered into a valid settlement agreement in this case. Secondly, appellant asserts the trial court erred in rejecting his argument that there can be no enforceable settlement of any wrongful death case without probate court approval. We initially address appellant's argument that the trial court erred in adopting the magistrate's findings as to the existence of a binding agreement. According to appellant, there was no meeting of the minds as to the material terms of an agreement.

{¶ 19} Under Ohio law, "a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996). In this respect, "[t]he

result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997), citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982). In order to "constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." *Id.* Further, "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Id.* at 377.

{¶ 20} Ohio courts recognize that "settlement agreements are highly favored in the law." *Continental W. Condominium* at 502, citing *State ex rel. Wright v. Weyandt*, 50 Ohio St.2d 194 (1977). Further, "[n]either a change of heart nor poor legal advice is a ground to set aside a settlement agreement," and a party "may not unilaterally repudiate a binding settlement agreement." *Walther v. Walther*, 102 Ohio App.3d 378, 383 (1st Dist.1995), citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36 (1972).

{¶ 21} In considering "matters of contract, this court applies the standard of review appropriate for the issue presented." *HSBC Bank USA, NA v. Rao*, 10th Dist. No. 23AP-293, 2024-Ohio-310, ¶ 12, citing *Wallick Properties Midwest, LLC v. Jama*, 10th Dist. No. 20AP-299, 2021-Ohio-2830, ¶ 11. Where "the 'issue is a question of contract law, we review whether the trial court's order is based on an erroneous standard or misconstruction of the law.' " *Id.*, quoting *Wallick* at ¶ 11. However, as opposed to "questions of law, 'if there is an evidentiary issue in dispute, "[i]t is within the sound discretion of the trial court to enforce a settlement agreement and this court has no authority to set aside the judgment of the trial court where the record contains some competent, credible evidence to support its decision regarding the settlement." ' " *Id.*, quoting *Zinsmeister v. Ohm*, 10th Dist. No. 21AP-684, 2022-Ohio-4787, ¶ 8, quoting *Associated Estates Realty Corp. v. Roselle*, 10th Dist. No. 98AP-1133, 1999 Ohio App. LEXIS 2831 (June 22, 1999).

{¶ 22} In considering objections to a magistrate's decision, "the trial court has the ultimate authority and responsibility over the magistrate's findings and rulings." *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, ¶ 16, citing *Sweeney v. Sweeney*, 10th Dist. No. 06AP-251, 2006-Ohio-6988, ¶ 13, citing *Hartt v. Munobe*, 67 Ohio St.3d 3, 5-6 (1993). The trial court must therefore "undertake an independent review of the

magistrate's report to determine any errors."  *Id.*, citing *Hartt* at 5-6, citing *Normandy Place Assoc. v. Beyer*, 2 Ohio St.3d 102 (1982), paragraph two of the syllabus.

{¶ 23} In raising an evidentiary challenge under the first assignment of error, appellant cites to exhibits introduced during the hearing before the magistrate, as well as various portions of the hearing transcript.  Appellant also relies on the affidavit of the former personal estate representative, Rhonda Kay Bower (individually "Ms. Bower"), submitted to the trial court subsequent to the magistrate's hearing.  On appeal, appellant has filed a transcript of the hearing before the magistrate.  However, as noted by the trial court in addressing appellant's objections to the magistrate's decision, appellant did not file a transcript of the magistrate's proceedings with the trial court.  The trial court further observed that "[n]othing in the record demonstrates that the transcript is unavailable." (Decision at 2.)

{¶ 24} Pursuant to Civ.R. 53(D)(3)(b)(iii), "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available."  Further, "[i]n the absence of both a transcript and an affidavit, the trial court must accept the magistrate's findings of fact and may only examine the legal conclusions drawn from those facts." *Ramsey* at ¶ 18, citing *Ross v. Cockburn*, 10th Dist. No. 07AP-967, 2008-Ohio-3522, ¶ 5, citing *Forth v. Gerth*, 10th Dist. No. 05AP-576, 2005-Ohio-6619, ¶ 9, citing *Carter v. Le*, 10th Dist. No. 05AP-173, 2005-Ohio-6209, ¶ 11.

{¶ 25} As indicated, in support of his objections, appellant submitted the affidavit of Ms. Bower, who did not appear at the hearing before the magistrate.  We note that Civ.R. 53(D)(3)(b)(iii) "does not give the objecting party the option of filing a transcript or an affidavit." *Beres v. G.S. Bldg. Co.*, 11th Dist. No. 2007-L-061, 2007-Ohio-6564, ¶ 22. Rather, " '[a]n affidavit may be employed only where a transcript of the proceedings is not available.' " *Id.*, quoting *Sain v. Estate of Haas*, 10th Dist. No. 06AP-902, 2007-Ohio-1705, ¶ 23.

{¶ 26} The trial court in this case addressed the "attached evidence to the Objection that was not presented in the motion briefing or at the hearing," noting that "[l]eave to present the same was not sought or granted."  (Decision at 2.)  The court also noted Ms.

Bower stated "she did not attend the hearing to offer her testimony because she lives four hours away." (Decision at 2.) The trial court observed, however, the hearing "was scheduled over a month in advance," and that "[t]his timeframe gave [Ms. Bower] the opportunity to make arrangements" or to "request a continuance to secure [her] appearance." (Decision at 2-3.) The court further observed Ms. Bower "did not attach the affidavit to the response to [appellees'] motion and did not attempt to submit this affidavit at the hearing," and the court also noted the magistrate's finding that Ms. Bower's "absence at the hearing was unjustified." (Decision at 3.) The court concluded that, "[b]ecause a transcript was not submitted and taking additional evidence is inappropriate, the magistrate's findings of fact are accepted as true" and "[a]ny references to the newly submitted evidence, including [Ms. Bower's] Affidavit, will be disregarded." (Decision at 3.)

{¶ 27} While appellant cites to Ms. Bower's affidavit, appellant does not address (or otherwise challenge) on appeal the trial court's determination that the affidavit evidence was "inappropriate." Further, while appellant cites to portions of the hearing transcript, we are unable to consider it under the circumstances. *See Parkerson v. Shie-Ming Hwang*, 10th Dist. No. 11AP-534, 2012-Ohio-1218, ¶ 8, citing *Ameritech Publishing, Inc. v. Mayfield*, 7th Dist. No. 10 MA 27, 2011-Ohio-2971, ¶ 11, citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995) (if a party fails to meet its obligation to support objections to a magistrate's factual findings with a transcript, "then an appellate court cannot consider a transcript submitted with the appellate record"). *See also Mengel v. Mengel*, 5th Dist. No. 21 CAF 05 0022, 2021-Ohio-4166, ¶ 11 ("When a party objecting to a magistrate's decision has failed to provide the trial court with a transcript of the evidence by which the trial court could make a finding independent of the decision, the appellate court is precluded from considering the transcript of the magistrate's hearing submitted with the appellate record."). In this respect, "[i]f an appellate court cannot consider a transcript of the magistrate's hearing, then appellate review is limited to determining whether the trial court abused its discretion in applying the law to the facts determined by the magistrate." *Parkerson* at ¶ 8, citing *Ameritech Publishing, Inc.* at ¶ 11.

{¶ 28} Here, the trial court determined "the magistrate properly found that the essential terms of the agreement were present." (Decision at 6.) The trial court found

appellees' "Hearing Exhibits A and B demonstrate that the parties resolved the case for $75,000.00." (Decision at 6.) Specifically, the trial court found "Exhibit A set forth an offer to settle at that amount and the terms of that offer," while "Exhibit B is an acceptance of that offer with no suggestion of material changes." (Decision at 6-7.) The court further held, "[f]or the reasons articulated by the magistrate, Plaintiff's Exhibit 1 also supports formation." (Decision at 7.)

{¶ 29} As set forth under the facts, Defendants' Exhibit 1 (Magistrate's Exhibit A) is an email sent from appellant's then-counsel, Stoudt, to counsel for appellees, dated October 4, 2023. That email states in part:

> Following up on our call yesterday. We've spoken to our clients, and they are willing to accept a settlement of $75,000 in * * * this matter. Such a settlement would include both survival and WD claims and be contingent on our getting probate court approval. We would take care of any liens including CMS (we will request a final demand letter ASAP once you confirm), although if a separate check will be needed on your end for the CMS lien that will be acceptable so long as we get confirmation of payment. No confidentiality/non-disparagement clause as to PGN Echo/Solivita Echo Manor as they are no longer in existence. Payment within 30 days of probate approval, payable to "Rhonda Kay Bower, Executor of the Estate of Edra Smith, and her attorneys Rourke & Blumenthal, LLC." Our firm's W-9 is attached.

(Defs.' Ex. 1, attached to Nov. 28, 2023 Mot. to Enforce.)

{¶ 30} Defendants' Exhibit 2 (Magistrate's Exhibit B) is an email response from counsel for appellees to Stoudt, dated October 4, 2023, in which counsel stated in part: "I can confirm that we are resolved at $75,000." On October 5, 2023, Stoudt informed counsel for appellees: "We'll get rolling on getting final lien number so that we can file the application and get probate hearing date." (Defs.' Ex. 3, Mag. Ex. C.) On October 6, 2023, Stoudt sent email correspondence to the trial court, informing the court: "Please note that the above-captioned case is resolving and will be dismissed following probate, etc., hopefully within the next 45-60 days." (Defs.' Ex. 4, Mag. Ex. D.) Appellant subsequently obtained new counsel, and on November 6, 2023, appellant's new counsel informed counsel for appellees: "As you know – this is a wrongful death case. It cannot be settled

without Probate Court approval which has not been obtained." (Defs.' Ex. 5, attached to Mot. to Enforce.)

{¶ 31} Upon review, we find no error by the trial court in overruling appellant's objection to the magistrate's determination that the parties entered into a settlement agreement. The exhibit evidence, including the above email correspondence, indicates that Stoudt, then counsel for appellant, expressed his client's willingness to accept a settlement of $75,000, that such settlement would include survival and wrongful death claims, and that it was contingent on probate court approval. The correspondence also addressed the issue of liens, provision for a no confidentiality/non-disparagement clause, and for payment to occur within 30 days of probate court approval. On the same date counsel for appellant sent the above correspondence, counsel for appellees "confirm[ed] that we are resolved at $75,000."

{¶ 32} Appellant contends there were material terms never discussed, including whether or not the settlement would be confidential, the issue of responsibility for payment of court costs, and whether or not appellant "would have to agree to not disparage" appellees. (Appellant's Brief at 5.)

{¶ 33} This court has previously noted that " '[a]n agreement is enforceable if it encompasses the essential elements of the bargain,' " and "[i]f less essential terms are omitted from an agreement, they may be resolved by 'later agreement or judicial resolution.' " *Ruffian, LLC v. Hayes*, 10th Dist. No. 09AP-948, 2011-Ohio-831, ¶ 17, quoting *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169 (8th Dist.1983). Further, "[a] dispute over a term's meaning does not necessarily equate to an omission of an essential term that renders an agreement unenforceable * * * because [a]ll agreements have some degree of indefiniteness and some degree of uncertainty." (Internal quotation marks deleted and citations omitted.) *Id.* at ¶ 18. Accordingly, courts have held that where "the essential terms" of a settlement agreement have been established, certain terms such as "how * * * payment was to be made" and "whether a confidentiality agreement would apply to the settlement agreement * * * are secondary to the meeting of the parties' minds on the essential terms of the agreement." *Kinnett v. Corporate Document Solutions, Inc.*, 5th Dist. No. C-180189, 2019-Ohio-2025, ¶ 30.

{¶ 34} Here, the magistrate considered the testimony presented at the hearing and found credible the testimony of appellant's former counsel, Stoudt, which included Stoudt's testimony that "he had the Estate's representative's authority to settle" for the terms outlined in the email correspondence. (Mag. Decision at 2.) The magistrate also considered the exhibits, including the email correspondence cited above, in concluding there was a meeting of the minds as to the essential terms of the agreement. The trial court, in reviewing the magistrate's decision and (in the absence of a transcript) accepting the magistrate's findings as true, overruled appellant's objection in which he asserted the parties did not reach a settlement agreement. Upon review, we find no error with the trial court's determination that the magistrate properly found there was a meeting of the minds between the parties as to the essential terms of a settlement agreement.

{¶ 35} Appellant next contends the trial court erred in rejecting his argument there can be no binding settlement agreement of a wrongful death claim without probate court approval. Appellant raised this argument before both the magistrate and trial court, relying primarily on a decision of the Third District Court of Appeals in *Fosnight v. Esquivel*, 106 Ohio App.3d 372 (3d Dist.1995). On appeal, appellant similarly relies predominantly on *Fosnight*, as well as *Withers v. Nationwide Mut. Ins. Co.*, 7th Dist. No. 04 MA 39, 2004-Ohio-6379, a case citing *Fosnight* with approval.

{¶ 36} Under the facts of *Fosnight*, the plaintiff, as administrator of his son's estate, brought a wrongful death action against the defendant administratrix of the estate of the tortfeasor following an automobile collision. The trial court granted the defendant's motion to enforce settlement agreement for the limits of an insurance policy. On appeal, the plaintiff argued "the purported settlement agreement is not binding absent the consent of the probate court." *Fosnight* at 374. In support, the plaintiff cited the provisions of R.C. 2125.02(C), which "mandates that a personal representative appointed by a probate court must obtain that court's consent regarding a settlement agreement." *Id.* at 375, citing *Matz v. Erie-Lackawanna RR. Co.*, 2 Ohio App.2d 136, 141 (9th Dist.1965).

{¶ 37} On appeal, the majority in *Fosnight* held that, "[p]ursuant to R.C. 2125.02(C), the probate court must approve any settlement." *Id.* Finding "no such probate court approval in the record," the majority concluded "the settlement fails to comply with the

statutory requirements and, as a result, the trial court erred in finding such a settlement enforceable." *Id.*

{¶ 38} The dissenting opinion in *Fosnight* found "the record demonstrates the attorneys for the parties had entered into a contract in settlement of the case," but that "this contract was subject to a condition subsequent," i.e., the "approval" of the probate court. *Id.* at 376 (Evans, J., dissenting). The dissent, while recognizing that the settlement "is not enforceable in its present form," and that it "still needs the approval of the probate judge before a court could order performance of the agreement," nevertheless found "[t]his lack of approval does not change the fact that the parties have a binding contract which governs the settlement of this case." *Id.* (Evans J., dissenting). Noting that "all parties in this matter were aware of the need for the approval of the probate judge," the dissent concluded "the trial court used the word enforceable to mean the contract was binding on the parties and, upon receiving the approval of the probate court, must be performed." *Id.* (Evans, J., dissenting).

{¶ 39} The dissent therefore would have remanded the case to the trial court "with instructions to order the agreement submitted to the probate court for approval." *Id.* at 377 (Evans, J., dissenting). Further, the dissent argued, "[i]f approval is forthcoming the case is settled according to the terms of the agreement," but if such approval "is not forthcoming the agreement is terminated because of the failure of the condition subsequent." *Id.* (Evans, J., dissenting).

{¶ 40} In the present case, the magistrate addressed the *Fosnight* decision and noted that, while the "case law states that one cannot have a final enforceable settlement without the probate court's approval," the majority opinion in *Fosnight* was "silent" as to whether parties can enter into a valid enforceable contract to seek that approval. (Mag. Decision at 9.) The magistrate concluded that the parties could do so, and that "[t]o hold otherwise would create a rule of law that would eviscerate the ability of honest litigants to negotiate a resolution of cases dealing with probate court approval." (Mag. Decision at 9.)

{¶ 41} The trial court, in ruling on appellant's objection to the magistrate's decision on this issue, also considered the decision in *Fosnight* and concluded the dissent in that case "addressed the relevant legal issue" in finding that "all parties were aware of the need for probate court approval when settling," and that "there was still a binding contract

governing the settlement of the case." (Decision at 4.) Finding the dissent in *Fosnight* persuasive, and "in line with the magistrate's conclusions of law" in the present case, the trial court agreed that the parties could enter a valid enforceable contract to seek probate court approval. (Decision at 4.) The trial court therefore overruled appellant's objection on this issue.

{¶ 42} Upon review, we find no error by the trial court. As set forth above, the record supports a determination that the parties reached a valid settlement agreement, and the parties' correspondence contemplated the agreement was "contingent" on obtaining "probate court approval." (Defs.' Ex. 1, Mag. Ex. A.) Relying on the dissent in *Fosnight*, the trial court found the absence of approval by the probate court was not dispositive of whether the parties had a binding agreement.

{¶ 43} As noted by the magistrate and trial court, the majority in *Fosnight* did not address the issue whether parties may enter into a valid agreement to seek probate court approval. That issue, however, was addressed by the dissent, who found the parties in that case had entered into a binding settlement agreement, subject to the "condition subsequent" of approval by the probate court. *Fosnight* at 376 (Evans, J., dissenting). The dissent recognized, with respect to the condition subsequent, the possibility that the failure to obtain approval would render the agreement "not enforceable" and "terminated." *Id.* (Evans, J., dissenting). Such statement reflects, in general, the nature of a condition subsequent, i.e., " '[a] contingency stipulated in a contract, on the happening or performance of which the contract, already in effect, may be defeated.' " *Maurer v. Chandler*, 96 Ohio App. 471, 475 (5th Dist.1954), quoting *W.N. Clark Co. v. The Banner Packing Co.*, 12 Ohio App. 87 (12th Dist.1919), syllabus. *See also Hongosh v. Piszko*, 8th Dist. No. 45623, 1983 Ohio App. LEXIS 14504 (May 19, 1983) (noting "[a] condition subsequent is a contingency whose fulfillment terminates or defeats a valid and existing contract").

{¶ 44} The dissent in *Fosnight* further recognized, however, the issue of whether the parties reached a binding agreement (subject to probate court approval) was distinct from "the need for the approval of the probate judge," i.e., the "lack of approval does not change the fact that the parties have a binding agreement." *Fosnight* at 376 (Evans, J., dissenting). We agree with that reasoning. Here, while the settlement agreement was subject to the

contingency (contemplated by the parties to the agreement) of obtaining probate court consent, we find the trial court did not err in rejecting appellant's contention there could be no binding agreement prior to probate court approval.

{¶ 45} We note, in addressing appellant's objection, the trial court found that appellant's position would militate against Ohio policy favoring settlement agreements, and "would mean that any settlement subject to probate approval could be unilaterally repudiated at any time prior to the probate court issuing approval, * * * even after probate approval has been sought"; thus, "prior to formal probate approval, a party could back out of a settlement agreement at any time, for any reason, without consequence." (Decision at 5.) The court observed "[t]his would greatly discourage settlement negotiations in all cases where probate approval is necessary." (Decision at 5.)

{¶ 46} We find merit with the trial court's determination that permitting a party to repudiate an otherwise valid settlement prior to a probate court's consideration whether to approve such settlement would discourage settlement. *See Zinsmeister* at ¶ 10, quoting *Commercial & Industries Maintenance Co. v. The Cincinnati Ins. Co.*, 10th Dist. No. 91AP-471 (Sept. 5, 1991) (noting " 'when parties agree to settlement, this agreement cannot be subsequently repudiated by either party, and * * * a trial court has the authority to sign a journal entry reflecting the settlement agreement reached between the parties and to enforce that settlement' "). *See also In re Manuel Mediavilla, Inc.*, 568 B.R. 551, 573 (B.A.P. 1st Cir.2017) (noting, in the context of bankruptcy proceedings requiring judicial approval of settlement agreements, "[t]he requirement of bankruptcy court approval of a compromise does not create a right of unilateral repudiation pending the court's consideration of the proposed compromise," and "[t]o hold otherwise would be contrary to the principles of contract formation and contrary to the strong public policy favoring the settlement of disputes"); *In re Seminole Walls & Ceilings Corp.*, 388 B.R. 386, 393, 395 (M.D. Fla. 2008) (citations omitted) (noting " '[s]ettlement agreements frequently provide that they are binding upon the parties when executed subject to the condition subsequent of the court's approval,' " and "[p]olicy * * * supports the conclusion that a party to a valid settlement agreement is bound to the contract unless and until the * * * court rejects the settlement, the happening of which voids the agreement").

{¶ 47} Upon review, we find the trial court did not err in conducting its independent review of the magistrate's decision and in overruling appellant's objections to the magistrate's decision granting appellees' motion to enforce settlement. Accordingly, appellant's single assignment of error is not well-taken and is overruled.

**IV. Conclusion**

{¶ 48} Based upon the foregoing, and having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

———————————